UNITED STATES of America,
Appellant,

v.

James E. WELLS, Jr.,
Defendant–Appellee.

No. 292, Docket 89–1272.

United States Court of Appeals,
Second Circuit.

Argued Oct. 17, 1989.

Decided Jan. 19, 1990.

Joseph D. Wilson, Asst. U.S. Atty., N.D. N.Y., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty. for the N.D.N.Y., John J. McCann, Asst. U.S. Atty., Albany, N.Y., of counsel), for appellant.

John T. Casey, Jr., Albany, N.Y. (Hancock & Estabrook, Albany, N.Y., of counsel), for defendant-appellee.

Before LUMBARD, MESKILL and WINTER, Circuit Judges.

LUMBARD, Circuit Judge:

The Government appeals from an order of the United States District Court for the Northern District of New York, entered April 27, 1989, which dismissed with prejudice an indictment charging that the defendant, James E. Wells, Jr., on or about March 13, 1987, falsely pretended to be, and falsely stated to one Chris Runnalls that he was, a Special Agent of the Drug Enforcement Administration and that as such he "was allowed to carry a gun which he had previously displayed" in violation of 18 U.S.C. § 912 (1982).

Upon reviewing the record, we find no support whatever for Judge Cholakis' conclusion that the indictment should be dismissed with prejudice. Accordingly, we reverse and remand for the entry of an order dismissing the indictment without prejudice, as the Government requests.

On March 20, 1987, Wells was arrested in Hudson Falls, New York, on the complaint of Robert K. Sears, Special Agent of the DEA, that Wells had impersonated a DEA agent and had stated that as such he was allowed to carry a handgun and sell cocaine. On the day of arrest, two guns were seized from his home in Lake Luzerne by New York State Police.

Wells was arraigned the same day before United States Magistrate Ralph W. Smith, Jr. in Albany. He was released on a $10,-000 personal recognizance bond. The recognizance bond which he signed, and of which he was given a copy, directed him to appear on April 8, 1987 for the preliminary hearing. He was also instructed to return on April 8 by the Magistrate, who emphasized that Wells would be committing an offense if he failed to appear as directed. It was a condition of the bond that he remain within the Northern District of New York, where he lived, and the Eastern District of New York, where he stated he had business to attend to, with permission to go through New York City on his trips to and from the Northern District. He was also directed to advise Agent Sears of any change in his address.

Wells failed to appear in Albany on April 8 for the preliminary hearing. Assistant U.S. Attorney John McCann notified Agent Sears of Wells' failure to appear, whereupon Sears notified the New York State Police in the Lake Luzerne area. Wells had given a trailer park in Lake Luzerne, in the Northern District, as his home address.

Efforts to locate Wells there were unsuccessful. Although Wells had told Agent Sears in a telephone talk a few days after his arraignment on March 20 that he would call Sears with his attorney's name and telephone number, he never did so.

On May 21, 1987, Wells was indicted for violating 18 U.S.C. § 912, in that he "did falsely pretend and assume to be an officer and employee of the United States ..., an agent of the Drug Enforcement Administration, and did falsely take upon himself to act as such in that he falsely stated ... that ... as a Special Agent of the Drug Enforcement Administration he was allowed to carry a gun which he had previously displayed" (Indictment 87–CR–116).

Wells was finally apprehended in September 1988 when a security clearance for employees at JFK Airport disclosed that he was wanted in the Northern District of New York. He was arrested at the International Arrivals Building on September 27 and waived a removal hearing. At a hearing in Albany before Magistrate Smith on October 14, 1988, Wells acknowledged that he had signed a form that said he was to appear on April 8, 1987, and that he had failed to do so. He said he had been evicted from the trailer park shortly after his arrest in March 1987 and eventually went to live with his father on Long Island. He also claimed that anonymous telephone threats had caused him to move. He gave no sufficient reason for not appearing.

On November 3, 1988, Wells was indicted in the Northern District for failing to appear as ordered on April 8, 1987. *See* Indictment 88–CR–179.

On January 4, 1989, Wells moved to dismiss the first indictment, 87–CR–116, claiming that the Government's failure to indict him within 30 days after his initial arrest violated § 3161(b)[1] of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1988). On February 10, 1989, Wells filed a supplemental motion to dismiss Indictment 87–CR–116 on the ground that the indictment, in alleging that Wells claimed to be a DEA agent authorized "to carry a gun which he had previously displayed," failed to charge an offense because the indictment failed to charge an overt act following the false claim of authority, Fed.R.Crim.P. 12(b)(2).

On April 27, 1989, Judge Cholakis granted the motion on both grounds and directed that the indictment be dismissed with prejudice, presumably pursuant to the sanctions provision of the Act, 18 U.S.C. § 3162(a)(1). Three parts of the order are relevant to this appeal.

First, Judge Cholakis dismissed the indictment because the Government did not diligently seek to determine Wells' whereabouts and thus failed to trigger the Act's tolling provision, 18 U.S.C. § 3161(h)(3)(A) and (B).[2] At oral argument, apparently drawing a negative inference, the judge explained that the steps taken by Assistant U.S. Attorney McCann, Agent Sears and the local police to locate Wells were not mentioned in the Government's motion papers and were brought to the court's attention for the first time at oral argument.[3] Judge Cholakis also stated that the Govern-

---

1. Section 3161(b) provides in relevant part:

    Any ... indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested ... in connection with such charges.

2. The Act provides:

    (h) The following periods of delay shall be excluded in computing the time within which an ... indictment must be filed ...:

    (3)(A) Any period of delay resulting from the absence or unavailability of the defendant....

    (B) For purposes of subparagraph (A) of this paragraph, a defendant ... shall be considered absent when his whereabouts are un-

known and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence. For purposes of such subparagraph, a defendant ... shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.

18 U.S.C. § 3161(h)(3)(A) and (B). This case concerns Wells' absence, not unavailability, as defined in the statute.

3. The Government's omission may have been due to its contention—erroneous, but bona fide—that a defendant tolls the 30–day deadline merely by failing to appear in court as ordered.

ment failed alternatively to prove that Wells was attempting to avoid prosecution, which proof would also have triggered the tolling provision.

Second, the court also dismissed the indictment for failure to state a prosecutable offense because the overt act of carrying a sidearm preceded, rather than followed, Wells' false claim of authority. According to Judge Cholakis, the overt act must *follow* the false claim of authority because the Second Circuit, to separate crime from mere bravado, has required "an overt act under the guise of the assumed identity," and the indictment here alleged only that Wells had "previously" possessed the gun. The indictment did not specify how long previously. However, the judge read the indictment to charge that the overt act was over and done with before Wells assumed the identity of DEA agent.

Third, Judge Cholakis ordered that the dismissal of the indictment be with prejudice, as authorized by 18 U.S.C. § 3162(a)(1), which requires the district court to consider at least four factors when deciding whether to dismiss an indictment with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). In ruling from the bench, Judge Cholakis stated that the facts alleged did not constitute a serious offense, that the Government failed to use due diligence to determine Wells' whereabouts, that this failure indicated that the Government did not think this a serious case, and that dismissal with prejudice would not adversely affect the administration of justice.

The Government appeals, arguing that Judge Cholakis should not have dismissed the indictment with prejudice. We agree.

There was no basis for the district court's conclusions that the Government was not duly diligent in its efforts to locate Wells and that therefore the Government did not consider this a serious case. The court inexplicably ignored the fact that Wells flouted his conditions of release by failing to appear on April 8. And it neglected to consider that any delay for which the Government might have been responsible did not prejudice Wells. Above all, there was no reason to conclude that the impact of reprosecution on the administration of the Act and of justice warranted dismissal with prejudice. Accordingly, we reverse.

■ Turning to the first statutory factor, we are mystified by Judge Cholakis' conclusion that Wells' impersonation of a federal officer was not a serious offense, especially when Wells is alleged to have carried a gun and to have claimed official authority to do so. Indeed, at the hearing on Wells' motion to dismiss, Judge Cholakis acknowledged that "impersonating a federal officer is … always a serious offense…." Yet he held that this impersonation was not serious because Wells "merely" claimed to be a federal agent in order to explain the gun that he had previously displayed.

The record shows every reason why the Government would consider this a serious offense which should be prosecuted. Wells was convicted of the exact same offense in 1980 and was sentenced to eighteen months' incarceration. This fact alone would have been sufficient ground for considering Wells' offense to be serious.[4]

■ Nor do we find in the record anything to support Judge Cholakis' analysis of the second statutory factor, the "facts and circumstances of the case" leading to dismissal. Above all, he ignored the facts that Wells deliberately and inexcusably failed to appear for the preliminary examination on April 8, failed to notify Agent Sears of his change of address, and remained out of contact with the Government

---

**4.** The fact of his 1980 conviction could also be considered separately by the court as one of the additional but undescribed factors Congress permitted the court to consider. The Act provides

that "the court shall consider, *among others,* each of the following factors…." § 3162(a)(1) (emphasis added).

until he was arrested over a year later.[5] On this record, it is quite likely that Wells' failure to appear on April 8 contributed to the Government's delay in bringing the indictment. But even if it did not, it was certainly one of the important "facts and circumstances" leading to dismissal.

■ Indeed, in a similar case, the Supreme Court recently stated that even when a defendant's flight did not ultimately cause the Government to wait longer than the seventy days it has to try a defendant after indictment, the defendant's flight is "certainly relevant as [one of the] 'circumstances of the case which led to the dismissal,' § 3162(a)(2) [regarding dismissal with and without prejudice when the Government has waited longer than seventy days after indictment to try the defendant], and weigh[s] heavily in favor of permitting reprosecution." *United States v. Taylor*, 487 U.S. 326, 108 S.Ct. 2413, 2421, 101 L.Ed.2d 297 (1988). What the Court said concerning delay in trying a defendant applies as well to the delay in indicting Wells. A defendant's wrongful failure to appear when required by the court, whether at trial, as in *Taylor*, or at a preliminary hearing, as here, is one of the circumstances of the case that the court must take into account when determining whether to dismiss with prejudice.

We find no basis in the record for the district court's conclusion that "the Government itself did not consider this case that serious" because it failed to make "any reasonable attempts to ... locate the defendant." The Government did make reasonable attempts to locate Wells. At the hearing on Wells' motion to dismiss, Assistant U.S. Attorney McCann stated that, in the week after Wells failed to appear, Sears and the state police looked for Wells and discovered that he was apparently no longer at his stated address in the Northern District. Given that Wells had disappeared without sending any word as to his whereabouts, the failure of the Government to find Wells is not chargeable to the Government.

■ As the burden was on Wells to explain his failure to appear on April 8 and to advise the Government of his whereabouts, it was an abuse of discretion for the district court to disregard the statements of the Assistant U.S. Attorney concerning the Government's actions in attempting to find Wells.

■ To dismiss an indictment with prejudice for a violation of the Speedy Trial Act, the court should specifically describe the Government's conduct and find that conduct to be more than "an isolated unwitting violation," *Taylor*, 108 S.Ct. at 2421, be it a "truly neglectful attitude," "bad faith," a "pattern of neglect," *id.* at 2420, or other serious misconduct. Here, the Government's conduct in failing to indict Wells within 30 days of his arrest was not the sort of impropriety that could tip the balance against the Government. The record does not contain any evidence of bad faith or a neglectful attitude on the part of the Government. *See United States v. Hernandez*, 863 F.2d 239, 244 (2nd Cir. 1988) ("in the absence of a factually supported finding of bad faith or a pattern of neglect by the local United States Attorney, an 'isolated unwitting violation' of the Speedy Trial Act cannot support a decision to dismiss with prejudice [citing *Taylor*, 108 S.Ct. at 2421]").

■ With regard to the remaining statutory factors—the impact of reprosecution on the administration of the Act and of justice—the district court failed to consider whether the 32–day delay in indictment, from April 20 until May 21, caused any prejudice to Wells, who has not complained

---

5. Wells claims that agent Sears led him to believe that he need not appear on April 8 as long as he stayed in contact with Sears. But since Sears denies having done anything of the sort and since Wells never stayed in touch with Sears in any event, we have no trouble concluding that Wells has given no reason for his failure to appear; his subsequent disappearance was deliberate.

of any prejudice whatsoever. Prejudice, or the absence thereof, is a factor to be considered by the district court when deciding whether to dismiss with or without prejudice under § 3162(a)(1). *Taylor*, 108 S.Ct. at 2418. Moreover, "although the absence of prejudice is not dispositive," it can be "another consideration in favor of permitting reprosecution." *Id.* at 2422.

The district court's analysis of these statutory factors consisted of the conclusory statement that "this is not in this Court's judgment the type of case which would have any lasting adverse effect on the administration of justice by the dismissal with prejudice." The judge did not analyze the effect of permitting reprosecution on the administration of the Speedy Trial Act. We detect nothing in this record to indicate that the Government's delay caused any prejudice to Wells or that permitting reprosecution would adversely affect the administration of the Act.

■ In view of the likelihood of further prosecution of Wells' alleged offense, we address the independent ground on which Judge Cholakis dismissed the indictment, namely, its alleged failure to charge an offense. We do not agree with the district court that, in cases of impersonation of a federal officer under 18 U.S.C. § 912, the overt act by the defendant, of which the statute requires proof, must *follow* the defendant's false claim of authority. The defendant's overt act may follow or precede the false claim of authority as long as the act is part of the same incident or related acts during which the false claim is made. The statute provides:

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, *and acts as such,* ... shall be fined not more than $1,000 or imprisoned not more than three years, or both.

18 U.S.C. § 912 (emphasis added). The emphasized portion is the overt act requirement. Judge Cholakis would apparently

read it as, "and thereafter acts as such." Clearly, however, the statute does not require the overt act to follow the false claim of authority. Nor would such a rule make sense. The spirit of the statute would be violated just as much by a defendant who displays a gun and then claims to be a federal officer to prove he is authorized to display the gun, as by a defendant who claims to be a federal officer and then displays a gun to assert that he has the authority he claims. Either way, the offense is the same: a false claim of federal authority going above and beyond mere bravado. Thus, should the Government seek a new indictment, that indictment would state a prosecutable offense if it alleges that Wells previously displayed the gun in the same incident or series of related acts during which he claimed federal authority.

Faced with the prospect of another jail sentence for a second offense of impersonating a federal law enforcement agent, Wells deliberately became a fugitive from justice. The delay in indicting him was due in large part, if not entirely, to Wells' failure to appear for pre-trial examination as he had agreed to do. The delay did not prejudice him in any respect. It is unthinkable that, on the facts in this case, an indictment of such an offender for such an offense should be dismissed with prejudice.

Reversed and remanded with instructions to vacate the order dismissing the indictment with prejudice and to enter an order dismissing the indictment without prejudice. The mandate shall issue forthwith.