**UNITED STATES of America, Plaintiff,**

v.

**Mary MANCUSO, Defendant.**

**No. 01–CR–74(DRH).**

United States District Court, E.D. New York.

Feb. 10, 2004.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Central Islip, NY, By Mark Lesko, A.U.S.A., for the Government.

Stephen P. Scaring, Matthew W. Brissenden, Faith A. Friedman, Garden City, NY, Randy Scott Zelin, P.C., Westbury, NY, for Defendant.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

By notice of motion dated August 27, 2003, defendant moved for an Order "dismiss[ing] the indictment on the ground that it was filed in violation of the Speedy Trial Act."

## FACTS

On October 15, 1997, a criminal complaint was filed against defendant alleging that she "did knowingly and intentionally transport, transmit and transfer in interstate commerce securities with a value of $5,000 or more, to wit: corporate checks in the amount of approximately $590,600 knowing the same to be stolen, converted or taken by fraud, in violation of 18 U.S.C. Section 2314." Compl. and Aff. Supp. of Arrest, Attached as Ex. A, Notice of Motion.

Defendant was arraigned on October 16, 1997, at which time a thirty day waiver of speedy indictment was entered. Defendant was released on bail the following day. On or about November 13, 1997, defendant's then attorney, Raymond Grunewald, Esq. ("Grunewald") agreed, via a letter to the Assistant United States Attorney handling the case (the "AUSA"), to waive speedy indictment for an additional sixty days, i.e. until January 12, 1998. Because there is no evidence to indicate that the November 13, 1997 letter was approved by the Court as required by 18 U.S.C. § 3161(h)(8)(A), there is a persistent question whether this letter was effective in tolling the speedy trial clock. In any event, the case thereafter remained inactive. No further speedy indictment waivers were executed and the complaint remained open.

On January 19, 2001—three years after the problematic letter waiver would have expired—defendant was indicted. The indictment charged defendant with a single count of violating 18 U.S.C. Section 2314— the same charge alleged in the complaint.

Defendant's motion is relatively straightforward. She seeks a dismissal of the indictment, with prejudice, based on the government's conceded noncompliance with the Speedy Trial Act, 18 U.S.C. § 3161 (the "Speedy Trial Act" or "Act").

## APPLICABLE LAW

The Speedy Trial Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date in which the individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). The Act further provides that the thirty day time period may be extended "if the judge grant[s] such continuation on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and defendant in speedy trial." 18 U.S.C. § 3161(h)(8)(A). In granting an extension under Section 3161(h)(8)(A), the Court must state the basis for its conclusion that a continuation is warranted. If the indictment is not filed within the proscribed time frame, the charges "shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1).

■ It is undisputed at least three years of untolled time separated defendant's arrest and the return of the present indictment. It is also undisputed that, given the mandate contained in Section 3162(a)(1), the indictment must be dismissed. The sole issue is whether the dismissal should be with or without prejudice. In making that determination, the Court is required to consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; the impact of a reprosecution on the administration of [the Act] and on the administration of justice." 18 U.S.C. Section 3162(a)(1). The Supreme Court has added to the statutorily provided factors another consideration, to wit, any prejudice to defendant occasioned by the delay. *United States v. Taylor*, 487 U.S. 326, 334, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988). Each of these factors will now be discussed in turn.

## DISCUSSION

### 1. Seriousness of Offense

A violation of Section 2314 is a Class C felony (18 U.S.C. Section 3581(b)), punishable by up to ten years in prison.

The grand jury has charged that defendant, while employed as the office manager and bookkeeper of VIMRx Pharmaceuticals, Inc. ("VIMRx"), fraudulently prepared and signed seventy four VIMRx checks payable to C.X.I., Inc. ("CXI") (a company in which she was a co-owner), which checks she transported across state lines and deposited into a CXI account. The amount of the checks totaled approximately $590,600.00. At the time, VIMRx owed CXI in the neighborhood of $2,600.00. It is alleged that the difference between the amount owed and the amount paid to CXI was utilized by defendant to benefit various employees of CXI.[1]

The seriousness of the offense charged weighs against a dismissal of the indictment with prejudice.

---

1. The Section 3161(a)(1) seriousness factor ordinarily focuses solely on the charge rather than, e.g., the strength of the government's case or the likely outcome of the proceedings. To do otherwise would inordinately complicate and extend the analytical process. However, it warrants mention that defense counsel indicates—and the government has not disputed—that the prosecution was prepared to offer a misdemeanor plea to resolve this case. Zelin Oct. 23, 2002 Letter to the AUSA at 3.

Any felony charge is serious. But there are degrees of seriousness. The charge leveled against defendant by the grand jury is weighty, although the plea negotiations raise the question of whether the seriousness is of the magnitude suggested by a reading of the indictment.

### 2. Facts and Circumstances Which Led to the Dismissal

#### a) Length of Delay

■ "[W]here the crime charged is serious, the sanction of dismissal with prejudice should ordinarily be imposed only for serious delay." *United States v. Simmons*, 786 F.2d 479, 485 (2d Cir.1986).

It is undisputed that the delay here is serious. The untolled passage of time is at least three years. Relevant case law, including decisions cited by the parties, involve far shorter periods of delay. *See, e.g. United States v. Taylor*, 487 U.S. 326, 341, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988) ("Act's 70 day indictment-to-trial period . . . exceeded by 14 nonexcludable days"); *United States v. Wilson*, 11 F.3d 346, 352 (2d Cir.1993) ("at most forty two days" of unexcused delay for one defendant in filing indictment, and fourteen and thirty one days for the other two defendants respectively); *United States v. Giambrone*, 920 F.2d 176, 178 (2d Cir.1990) (seventy day indictment-to-trial requirement exceeded by twenty days [i.e. "90 nonexcludable days"—seventy days]); *United States v. Hernandez*, 863 F.2d 239, 244 (2d Cir.1988) ("fourteen–day [nonexcludable] delay [between arrest and indictment]"); *United States v. Simmons*, 786 F.2d 479, 485 (2d Cir.1986) (delay between indictment and trial "almost four months, a significant portion [of which] was excludable"); *United States v. Caparella*, 716 F.2d 976 (2d Cir.1983) (dismissal of complaint after fifty one days for failure to indict); *Williams v. United States*, 123 F.Supp.2d 100 (E.D.N.Y.2000) (arrested on May 7, 1997 and not indicted until June 30, 1997); *United States v. Caloia*, 1995 WL 293961 (S.D.N.Y. May 15, 1995) (post indictment delay in bringing defendant to trial involved "fifteen unexcludable delays (*id.* at *2)") and *United States v. Cortinas*, 785 F.Supp. 357, 360 (E.D.N.Y.1992) (delay between arrest and indictment exceeded the thirty day requirement by either six or seven days). In sum, the three untolled years separating defendant's arrest and indictment appears to be unparalleled in this Circuit, at least by way of reported decisions.

*United States v. Stayton*, 791 F.2d 17 (2d Cir.1986) involved a lesser but, nonetheless, protracted hiatus between indictment and trial. The decision is significant for it articulates the relationship between the temporal extent of the Act's violation and the issue of whether a dismissal order should permit reprosecution. In *Stayton*, an effort was made to circumvent the statutory time frame for bringing a defendant to trial by completing the voir dire within seventy days of indictment but not swearing-in the jury and otherwise proceeding with the case until an additional twenty-three months had passed. Then–Circuit Judge George C. Pratt, writing for the panel, first underscored that the "Speedy Trial Act was designed to effectuate the interest of society in general and the defendant in particular by ensuring that our courts mete out speedy justice." *Id.* at 19–20. In reversing a dismissal without prejudice, the Circuit held:

> The sheer length of this delay in the context of a record that does not hint at a single justifying reason leads us to conclude that there can be no justification. A delay of the magnitude imposed on defendant here blatantly offends the purpose and spirit of the act. . . . *Id.* at 20.

*Stayton* predates the Supreme Court's holding in *Taylor*. *Taylor* explained that prejudice to the defendant, in addition to the factors listed in Section 3161(a)(1), must be evaluated in determining whether a dismissal should be with or without prejudice. No one factor is dispositive but all must be addressed.

The *Stayton* Court considered the same Section 3162(a) factors as the Supreme Court in *Taylor*, plus prejudice to the defendant. After doing so, it concluded that the "enormity of the delay [was] sufficient alone to tip this second factor [viz. the attendant facts and circumstances] in favor of dismissal of the indictment with prejudice." *Id.* at 22. That conclusion is not inconsistent with *Taylor*.

The *Taylor* Court held that the dismissal ordered by the lower court should have permitted reprosecution. Central to its analysis was the direct correlation between the extent of the Speedy Trial Act violation and likely prejudice to the defendant, which it explained thusly:

> The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty:
>
> "[I]nordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'"
> *Barker v. Wingo*, 407 U.S. 514, 537, 92 S.Ct. 2182, 2195, 33 L.Ed.2d 101 (1972) (White, J., concurring), quoting *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971).

487 U.S. at 340–341, 108 S.Ct. 2413.

■ The fourteen day delay in *Taylor* was brief, evidencing, all other things equal, a non-serious violation and the probable absence of prejudice to the defendant. Conversely, the delay here is extraordinary and, consistent with *Taylor* direct correlation analysis, suggests a serious violation with concomitant prejudice to defendant. Indeed, the evidence proffered by the defense indicates that the delay has "seriously interfere[d] with [defendant's] liberty interest" (as that term is explained in *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)), and that her ability to mount a defense has likewise been compromised (*see* discussion of prejudice factor, *infra* ).

Although the thirty-six months of nonexcludable delay weighs significantly in favor of a dismissal with prejudice, that factor alone obviously falls far short of being dispositive.

The holding in *Stayton* rested primarily on the "sheer length of the period involved" given the absence of countervailing factors justifying the delay. *Stayton*, 791 F.2d at 21.

The government maintains that, unlike *Stayton*, there are countervailing circumstances here, viz. (1) defendant "induced the government to delay [the] filing of the Indictment, [and thus] she should be estopped from raising the issue of a speedy trial violation (Gov't's Sept. 16, 2003 Letter, n. 1)," (2) the government was repeatedly assured by defense counsel that they "would not raise any speedy trial issues," [2] (Gov't's Sept. 16, 2000 Letter at 3), and (3) the AUSA's failure to comply with the Speedy Trial Act "can best be attributed to an inadvertent assumption that the complaint had previously been dismissed; this, it is claimed, constituted

---

**2.** The use of the word "any" indicates that the purported assurances embraced both statuto-ry and constitutional claims.

an 'isolated unwitting violation' of the Speedy Trial Act" (*id.* at 4)." Additionally, the government contends that defendant "cannot establish that she was prejudiced by the delay in filing the indictment." *Id.* Each of these items will be addressed in turn.

b) *Government's Waiver/Estoppel Argument*

■ With respect to the waiver/estoppel argument, the general rule is that an accused may not waive the protections afforded by the Speedy Trial Act. *United States v. Gambino*, 59 F.3d 353, 360 (2d Cir.1995). "The reason why a defendant cannot waive the time constraints of the Speedy Trial Act is that the public has as great an interest in a prompt criminal trial as has the defendant. Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied.' The legislative history of the Act confirms the importance of the non-waiver rule." *Id.* However, "when a defendant's conduct causes or contributes to a period of delay, that time may be excluded from the running of the speedy trial clock." *Id.* Even though the term "causes or contributes" suggests that the scope of the exception is broad, the converse is true. Otherwise, "the exception could swallow the non-waiver rule." *Id.*

■ The limited type of conduct that triggers waiver or estoppel is well synopsized in the following excerpt from *Williams v. United States:*

In sum, when a defendant seeks to use the Speedy Trial Act as a shield and a sword, and treats the protection the Act was designed to afford as a game of strategy by requesting delays and then attempting to utilize those delays to demand dismissal of the indictment, his behavior may amount to a valid waiver.

123 F.Supp.2d 100, 104 (E.D.N.Y.2000).

The AUSA who was in charge of the prosecution until relatively recently is no longer with the Office. The current AUSA assigned to the case, has not provided an affidavit from his predecessor regarding pre-indictment interaction with the defense, even though the Court expressed concern about that deficiency during the motion hearing. Tr. of Oct. 10, 2003 Motion Hr'g at 6, 11–12. However, the government has proffered the following items in support of the government's waiver/estoppel argument: four letters from defense counsel[3] to the AUSA dated April 3, 2000, August 21, 2000, July 31, 2001 and October 23, 2002, plus Zelin's affirmation of September 25, 2003.

■ Attention will be directed initially to the letters. The last two letters postdate the indictment and are irrelevant for present purposes. *United States v. Caparella*, 716 F.2d at 980–81 (The "Congress envisioned separate time limits for the ... separate stages of prosecution and ... the dismissal sanction [applies] to [a] violation of any of the time limits, regardless of whether the others were ultimately satisfied"); *Gambino*, 59 F.3d at 361 ("[H]ere the right to a speedy trial guaranteed under the Act had already been vio-

---

**3.** Defendant was represented by Grunewald from November 12, 1997 until "late 2000 when [he] was ... replaced by ... Randy Zelin ['Zelin']." Grunewald Sept. 12, 2003 Aff. at 1; *see also* Zelin Sept. 25, 2003 Aff. at 1 (Zelin's representation started in "early November 2000.").

Zelin has continued as her attorney, joined post-indictment by Stephen P. Scaring, Esq. ("Scaring"), who has made the present motion on behalf of defendant.

lated, and defense counsel's delaying strategy [thereafter] may not be used as a reason retroactively to waive this guaranteed right.") And the information recited in the pre-indictment letters of April 3, 2000 and August 21, 2000, is inadequate to trigger the exception to the general rule that a defendant may not waive or be estopped to assert the provisions of the Speedy Trial Act. Neither letter contains a request that the government delay presenting the case to a grand jury pending resolution of the civil proceeding.

As first blush, the government seems to fare better vis-a-vis its reliance on the Zelin affirmation, paragraph 7 of which reads:

> [P]rior to the January 19, 2001 indictment, the Government was inclined to offer Ms. Mancuso a deferred prosecution if she settled the civil suit brought by VIMRx, the alleged victim. The Government had agreed not to put the case into the Grand Jury while *I* was given the chance, along with Ms. Mancuso's civil counsel, to settle the civil suit.

Emphasis added.

■ Zelin's representation of defendant began in November 2000. By then, the thirty day period for the filing of the indictment had been violated by almost two years. Unless Zelin's purported "deliberate ... strategy of delay ... preceded the government's violation of the Act, there can be no holding that such conduct amounted to waiver." *Gambino*, 59 F.3d at 362. Which is to say, the government's reliance on Zelin's affirmation is misplaced. Reference to Grunewald's affirmation does not fill the void.

Grunewald explains in his affirmation that he "merely was waiting out the possibility that [he] could persuade the government that no indictment should be returned because of what [he] viewed as exculpatory material that [he] was for-

warding to government counsel from Mancuso's civil case." Grunewald Sept. 19, 2003 Aff. at 1. Significantly absent from Grunewald's affirmation is an indication that he asked the government not to seek an indictment until that process had run its course. To the contrary, Grunewald avers that he "did not explicitly or implicitly agree to any further waivers [i.e. beyond the attempted sixty day letter waiver of November 13, 1997] of defendant's right to a speedy indictment." *Id.* Had Grunewald asked for the delay as per the government's proffer, he would have implicitly consented to the concomitant delay.

Similarly unsubstantiated is the government's proffer that defense counsel agreed not to raise any speedy trial issues. That proffer is not accompanied by evidence from an AUSA with first hand information, and is categorically contradicted by the affirmations of Grunewald and Zelin. Both defense counsel aver that they never made such a representation, which the Court accepts as accurate. Grunewald Sept. 19, 2003 Aff. at 2; Zelin Sept. 25, 2003 Aff. at 1.

In sum, defendant did not waive nor is she estopped from relying upon the Speedy Trial Act in seeking that the indictment against her be dismissed, with prejudice.

c) Government's Argument that the AUSA's *Transgression was an Isolated, Unwitting Violation*

Attention will now be directed to the government's position that the relief requested by defendant should be denied because the AUSA's error was an isolated, unwitting violation of the Speedy Trial Act. "To dismiss an indictment with prejudice ... the court should ... find that conduct to be more than an 'isolated, unwitting violation,' be it a 'truly neglectful attitude,'

'bad faith,' a 'pattern of neglect,' or other serious misconduct." *United States v. Wells*, 893 F.2d 535, 539 (2d Cir.1990).

The genesis of the error in this case is said to be the AUSA's belief "that the Complaint ... had been dismissed." Gov't's Sept. 16, 2003 Letter at 3. Although the Court believes that this representation is advanced in good faith, its legitimacy is belied by the concurrent claim that defense counsel supposedly asserted, as previously discussed, that they would "not raise any speedy trial issues." [4] If, contrary to the fact, the complaint had been dismissed, such assurances would have been superfluous as no speedy trial issue under the Act would have arisen.

To the extent the government contends that a finding of serious misconduct by the government is a prerequisite to a dismissal barring reprosecution, this Court has its doubts. Granted, language supportive of that position may be found in both *Wells* and *United States v. Hernandez*, 863 F.2d 239, 244 (2d Cir.1988) (*dictum*). However, such language must be viewed in context.

A reading of Section 3162(a)(1) and *Taylor* demonstrates that all of the various considerations are to be factored into the analysis, with a recognition that each case is *sui generis* and that no one consideration is generally dispositive. That a dismissal should be without prejudice, absent "evidence of bad faith or a pattern of neglect," where the "delay was concededly short ... and defendant failed to demonstrate any prejudice from the delay," as in *Hernandez*, should not be read as warranting the same result where, as here, the length of delay is extraordinary and defendant demonstrates prejudice. *Hernandez*, 863 F.2d at 244. *Wells* similarly involved a short delay and the absence of prejudice. *Wells*, 893 F.2d at 539–40.

Even if, however, some sort of significant governmental impropriety is a *sine qua non* to a dismissal with prejudice, such impropriety is present. The AUSA displayed a "lackadaisical attitude" in discharging his obligations under the Speedy Trial Act. *United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir.1990) ("the court may properly take into account a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case *or* a pattern of dilatory practices on the part of the United States Attorney's office in the district in question")(emphasis added).

A person may make a simple mistake and not become aware of that mistake until a considerable period of time has passed. Under such circumstances, the length of time is not necessarily inconsistent with the initial error being unwitting and isolated in character. However, here (1) the AUSA was presumably cognizant of the requirements of the Act, having endeavored to comply with those requirements for the first ninety days following defendant's arrest, (2) the case did not simply fall off the radar screen given the evidence of intermittent plea negotiations that occurred during the period and (3) the government's speculation that the AUSA who handled the case believed that the complaint had been dismissed is, as noted, belied by the concurrent unsubstantiated claim that the defense assured the prosecution that no speedy trial claim would be advanced. Those three considerations, together with other evidence presented, signify a continuing neglectful attitude during the three year pre-indictment delay, rather

---

4. *See* n. 2, *supra.*.

than an isolated, unwilling violation of the Speedy Trial Act.[5]

 The government maintains that the Office, as distinct from this AUSA, has a proven track-record of compliance with the Act's mandates. This factor favors a dismissal without prejudice, as does the fact that the AUSA was apparently endeavoring in good faith to work with defense counsel towards a negotiated disposition of the case for at least some portion of the time involved. Additionally, defendant never complained of the delay. That is arguably of some significance (*United States v. Caloia*, 1995 WL 293961, at *5), even though a defendant has "no obligation to take affirmative steps to insure that [she is] tried in a timely manner." *United States v. Tunnessen*, 763 F.2d 74, 79 (2d Cir.1985). But it must be remembered that, in the final analysis, the Office operates through its AUSAs. In some instances, that means that a dismissal with prejudice is called for even if the Office practice generally honors the requirements of the Speedy Trial Act.

In sum, the facts and circumstances leading to the dismissal—particularly the enormity of the time involved—favor the relief sought by defendant.

### 3. *Impact of Reprosecution on Administration of Speedy Trial Act and Upon the Interests of Justice*

"The Act is intended both to protect the defendant from undue delay in the resolution of his case and to benefit society by ensuring quick resolution of criminal trials." *United States v. Fajardo*, 1997 WL 669862 (S.D.N.Y. Oct.28, 1997); *see also Stayton*, 791 F.2d at 19–20. To accomplish those goals, the Congress provided, inter alia, that an indictment must be returned within thirty days of arrest. A court may extend that period, based on several statutory criteria, if it concludes that the "ends of justice ... outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). The Court must make its determination on the record contemporaneously with the granted continuance. *United States v. Kelly*, 45 F.3d 45, 47 (2d Cir.1995).

A dismissal without prejudice is "not a toothless sanction." *Taylor*, 487 U.S. at 342, 108 S.Ct. 2413. Here, however, given the totality of the circumstances, a dismissal with prejudice is warranted. Other than a brief initial effort to obtain waivers from defendant, the AUSA improperly culled the Court out of pre-indictment continuation process and kept the case in a post-arrest, pre-indictment posture for three years. And defendant, as explained *infra*, was prejudiced by that passage of time. In my view, permitting reprosecution would unduly compromise the congressional goals underlying the enactment of the Act as well as the interests of justice.

### 4. *Prejudice to Defendant*

Prejudice typically involves the effect that delay has on a defendant's ability to mount a defense. *United States v. McCrudden*, 222 F.Supp.2d 352, 356 (E.D.N.Y.2002) and cases cited therein. But inordinate delay may also prejudice a defendant by interfering with his " 'liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.' " *Taylor*, 487 U.S. at 340, 108 S.Ct. 2413. "The longer the delay, the greater the presumptive or actual prejudice" of both types. *Id.*

---

**5.** Defendant has presented evidence suggesting that the AUSA's noncompliance was not limited solely to this case. *See* Scaring Sept. 25, 2003 Aff., ¶s 15, 16 and 17.

To place defendant's argument of prejudice in context, it is necessary to briefly review the parties' factual claims. Defendant stands accused of stealing monies from her ex-employer, VIMRx, by improperly issuing checks to CXI, a company in which, as noted previously, she was a part owner. Defendant contends, however, that the transfers were legitimate compensation due and owing for overtime hours and bonuses she was asked to defer until VIMRx was on a more solid financial footing. In support of her position, defendant has furnished photocopies of intra-office memoranda from the defendant to the former CEO of VIMRx, M. Koly, which, she claims, confirm that she was authorized to receive the funds. Some of the memoranda were also purportedly signed by M. Koly, presumably, defendant would argue, to indicate his receipt of the subject memoranda and the approval of their contents.

The defendant reports, and the government does not contest, that the prosecution believes that the memoranda were generated after the fact to conceal her criminal activities. According to defense counsel Scaring:

> Upon information and belief, the originals of the documentary proof were contained in Ms. Mancuso's personnel file in the VIMRx offices, computer scanned copies of the signed memos were saved on the VIMRx computer server, and the originally-created documents and the information surrounding their date and time of creation and modification were saved on Ms. Mancuso's personal work station computer located at VIMRx's offices.

> Upon information and belief, in or about 1999, during the period of delay between the filing of the complaint in 1997, and the indictment in 2001, VIMRx lost portions of Ms. Mancuso's

personnel file which contained the original documentary evidence, as well as the computer hard drives into which they were scanned, as well as those hard drives on which they were originally created, thus, causing Ms. Mancuso significant actual prejudice to her defense.

Scaring Sept. 25, 2003 Reply Aff., ¶s 13 and 14.

The source of the "information and belief" is found in the supporting affidavits of defendant (Ex. B to Matthew W. Brissenden, Esq. Oct. 22, 2003 Aff.), as well as the affidavits of various computer consultants formerly employed by CXI, which provided computer consulting services to VIMRx. *Id.*, Ex. C and D. One of the consultants states that he scanned electronic copies of those memoranda onto VIMRx's Stanford, Connecticut computer server in June of 1996. *Id.* Ex. D, ¶ 10 ("I recall that I scanned into a VIMRx computer workstation about 20 (twenty) or more memoranda, each containing the original signatures of both Mary Mancuso and M.S. Koly, which authorized Mary Mancuso to receive funds in varying amounts, both small and large (up to over $100,000.00)).

The defense has also provided a deposition transcript of a former officer manager and document custodian at VIMRx indicating that both the server and defendant's hard drive were still in existence after defendant's arrest in October 1997. *Id.*, Ex. E. However, it appears that those items were lost in the intervening years leading to her indictment. Brissenden Oct. 22, 2003 Aff., ¶s 10, 12 and 13, referring to Ex. F and G.

The defense argues with more than a modicum of persuasiveness that forensic testing of those items might well buttress her defense by dispelling the prosecution's theory that defendant created the memo-

randa and supporting book entries after the fact.

Additionally, a review of the materials submitted indicates that defendant has established that she has endured the type of prejudice to her liberty interest and well-being described in *Taylor.*

In sum, the defendant has established that the three year non-excludable period separating her arrest and the indictment produced prejudice to her ability to mount a defense, and to her liberty interest as explained previously.

### CONCLUSION

For the reasons indicated—particularly the extraordinary period between defendant's arrest and indictment, and the prejudice sustained as a result thereof—the Court finds that defendant has met her burden of proof and the captioned indictment is dismissed with prejudice.

SO ORDERED.