**UNITED STATES of America,**

v.

**Rejean PEPPIN and Gilles Mercier, Defendants.**

No. 1:04–CR–407.

United States District Court, N.D. New York.

April 7, 2005.

Glenn T. Suddaby, United States Attorney, Northern District of New York, Albany, NY (Paul Silver, Assistant U.S. Attorney, of Counsel), for U.S.

Stanley L. Cohen, New York, NY, for Defendant Mercier.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. INTRODUCTION

Defendants were indicted on charges relating to the possession and sale of mari-

juana under 21 U.S.C § 841(a) and (b)(1)(B). Defendant Rejean Peppin ("Peppin") was also indicted for bribery, in violation of 18 U.S.C. 201(b)(1)(A) and (C). Defendant Gilles Mercier ("Mercier") filed an omnibus pretrial motion seeking dismissal of the indictment as it pertains to him based on violations of the Speedy Trial Act ("Speedy Trial Act" or the "Act"), 18 U.S.C. § 3161, the Sixth Amendment and Fed.R.Civ.P. 48(b), and to suppress physical evidence pursuant to the Fourth Amendment.[1] The government opposes. Oral argument was heard on January 28, 2005 in Albany, New York. Decision was reserved.

## II. FACTS

On May 13, 2003 Mercier was arrested near Plattsburgh, New York, after police found more than 100 pounds of marijuana in his car. A local law enforcement officer claims Mercier was stopped for using a cell phone and making an improper left hand turn. He was alone in the car. Mercier denies both allegations. He was arraigned the next day and charged with felony possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841. He was in detention until released after a hearing held on May 23, 2003. Peppin was arrested and charged with intent to distribute on June 9, 2003, when he was also alone and stopped with more than 100 ponds of marijuana in his car.

The government did not take any action to follow up on Mercier's arrest. There were no stipulations sought, motions filed, or fruits of discovery provided. The case was assigned to the same Assistant U.S. Attorney ("AUSA") throughout, who concedes that the delay in proceeding to indictment is attributable to the government.

Mercier was indicted August 11, 2004, fifteen months after his arrest. The indictment lists five counts. Count 2 relates the charge in the original criminal complaint against Mercier, possession of marijuana with intent to distribute on May 13, 2003, but also names Peppin. Counts 1 and 3 are new charges and also name both defendants. Count 3 relates the original complaint against Peppin for possession of marijuana with intent to distribute on June 9, 2003. Count 1 charges Mercier and Peppin with conspiracy to possess and distribute the marijuana from May through June 2003—a time period which includes the arrest dates in Counts 2 and 3. Counts 4 and 5 stand only against Peppin for alleged bribery of U.S. Customs Inspectors on the above dates.

## III. DISCUSSION

### A. Speedy Trial Act and Count 2

██ The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). If "no indictment or information is filed within the time limit ... such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). The government concedes that the Act has been violated as to Count 2 and that the charge must be dismissed. (Docket No. 18, U.S. Opposition Mem. p. 10) The question is whether the charge should be dismissed with or without prejudice. The defendant seeks a dismissal with prejudice, and the government requests dismissal without prejudice. The statute does not establish a preference between the two.

1. In view of this decision pursuant to the Speedy Trial Act, it will not be necessary to consider Mercier's other grounds for dismissal or the suppression motion.

*United States v. Coleman*, 170 F.Supp.2d 321, 324 (N.D.N.Y.2001) (citing *United States v. Taylor*, 487 U.S. 326, 334, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988)).

The determination is made through consideration of "among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(1); *Taylor*, 487 U.S. at 336, 108 S.Ct. 2413 (noting that district courts must carefully consider each factor and clearly articulate their effect). The presence or absence of prejudice to the defendant, though not dispositive, is also relevant. *Id.* at 334, 108 S.Ct. 2413.

### 1. *Seriousness of the offense*

Mercier is accused of possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). If convicted, the statute proscribes a minimum five year prison sentence. 21 U.S.C § 841(b)(1)(B). Courts are reluctant to declare any federal crime, especially felonies involving drugs, as "not serious," and thus drug crimes are regularly, almost automatically, deemed serious offenses for purposes of the § 3162(a)(1). "Any charge related to drug transactions must be considered serious today." *United States v. Giambrone*, 920 F.2d 176, 178–179 (2d Cir.1990)(case involved distributing and conspiring to distribute eight ounces of cocaine); *see Taylor*, 487 U.S. at 338, 108 S.Ct. 2413 (narcotics charges involving 400 grams of cocaine "serious"); *United States v. Simmons*, 786 F.2d 479, 485 (2d. Cir.1986)(possession of six glassine envelopes containing heroin with intent to distribute); *United States v. Clymer*, 25 F.3d 824 (9th Cir.1994)(conspiracy to distribute and aiding and abetting manufacture of methamphetamine); *United States v. Phillips*, 775 F.2d 1454, 1456 (11th Cir.1985)(importing marijuana); *United States v. Rodriguez*, 824 F.Supp. 657, 659 (W.D.Tex.1993)(conspiracy to possess with intent to distribute marijuana).

The seriousness of the charge is considered for purposes of weighing it against the seriousness of the delay and its effects. *See Simmons*, 786 F.2d at 485. This inquiry is obviously intended to be more complex than awarding a "yes" or "no" determination of seriousness. "Any felony charge is serious. But there are degrees of seriousness." *United States v. Mancuso*, 302 F. Supp 2d 23, 26 (E.D.N.Y.2004). Mercier argues that the offense is not serious enough to justify overlooking the fifteen month delay. The drug at issue is marijuana—an arguably less serious drug than heroin, cocaine or methamphetamine. However, the charge is considered serious and this factor weighs against dismissal with prejudice.

### 2. *Facts and circumstances of the delay*

The main considerations here are the length of delay and the reasons for it. Fifteen months passed between the May 13, 2003 arrest and the August 11, 2004 indictment. The thirty day requirement may be extended, or rather time may be excluded from the ticking of the Speedy Trial clock, for several reasons listed in the statute. *See* 18 U.S.C § 3161(h); *see e.g. United States v. Zedner*, 401 F.3d 36 (2d Cir.2005) (most of seven year gap between indictment and trial excluded from the running of the time clock). The government does not argue that any of those circumstances apply here, thus the full fifteen months is measured as a violation of the Act. This is considered a serious delay. *See Mancuso*, 302 F.Supp.2d at 27 (survey-

ing relevant case law and listing cases of violations of less than one month).

The inquiry thus turns to who is responsible for the delay and for what reasons. Any delay attributable to the defendant weighs against dismissal with prejudice, but there is no argument that Mercier caused any of the delay. *See e.g. United States v. Agostini,* 279 F.Supp.2d 276, 279 (S.D.N.Y.2003). Again, the government concedes it is entirely responsible. Thus, it must be considered "whether the failure of the United States was inadvertent or intentional." *United States v. Coleman,* 170 F.Supp.2d 321, 324 (N.D.N.Y.2001). Though somewhat disturbing, the government honestly, and thus to some extent commendably, admits it neglected Mercier's case. When asked why nothing was done between the arrest and indictment at oral argument, the AUSA replied, "I have, because of the nature of the practice in Albany, not paid as much attention to the Speedy Trial Clock as it deserves, and I have a number of cases in this position." [2] After conceding responsibility in its motion memorandum, the government explains that the delay "was not occasioned by any bad faith purpose or tactical advantage." (Docket No. 18, U.S. Opposition Mem. p. 5)

It is presumed that such candor is offered under the belief that it doesn't matter that the government ignores a case as long as it doesn't do it for strategic purposes or with some other "bad faith" intention. This interpretation of what conduct offends the Act is rejected in favor of the view that "the mere lack of improper motive is not a sufficient excuse for the delay. Some affirmative justification must be

demonstrated to warrant a dismissal without prejudice." *United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir.1984).

The Second Circuit held that, "in the absence of a factually supported finding of bad faith or a pattern of neglect by the local United States Attorney, an isolated unwitting violation of the Speedy Trial Act cannot support a decision to dismiss with prejudice." *United States v. McCrudden,* 222 F.Supp.2d 352, 355 (E.D.N.Y.2002) (citing *United States v. Hernandez,* 863 F.2d 239, 244 (2d Cir.1988)). The government conduct must be "more than 'an isolated unwitting violation'...[but rather] a 'truly neglectful attitude,' 'bad faith,' a 'pattern of neglect' or other serious misconduct." *United States v. Wells,* 893 F.2d 535, 539 (2d Cir.1990) (quoting *Taylor,* 487 U.S. at 338–39, 108 S.Ct. 2413). However, the government does not argue that the transgression here was an "isolated unwitting violation." In fact, it has other cases in this position. And "[a] truly neglectful attitude on the part of the Government reasonably [may] be factored against it in a court's consideration of this issue." *Taylor,* 487 U.S. at 338, 108 S.Ct. 2413.

Mercier appropriately characterizes the government's conduct as willful negligence and, depending on the other factors, such conduct may be sufficient to justify a dismissal with prejudice. As the court in *United States v. Mancuso* explained, "a reading of Section 3162(a)(1) and *Taylor* demonstrates that all of the various considerations are to be factored into the analysis, with a recognition that each case is *sui generis* and that no one consideration is

---

**2.** According to motion papers, Peppin is another one of those cases. The government did not deny or address the following statement contained in Mercier's memorandum. "According to [Peppin's attorney] the first and only discussion he has had with the government regarding the [Peppin] since his arrest

in June of 2003 occurred only this last week when the prosecutor learned through him that Peppin had not yet been arraigned." (Docket No.15, Omnibus Motion Mem. p. 17, n. 19) Motion memorandum papers were filed on January 3, 2005.

generally dispositive." 302 F.Supp.2d 23, 31 (E.D.N.Y.2004). For dismissal with prejudice after a short delay and no prejudice to the defendant, more serious poor conduct than mere oversight or negligence is required. For long delays with more prejudice less "serious conduct" may suffice. *Id.* at 31; *Simmons,* 786 F.2d at 485.

This case involves a fifteen month delay between arrest and indictment. It's not as if the case was attended to but the Speedy Trial clock and the need to seek stipulations was inadvertently overlooked. The entire case was overlooked. There was no ongoing investigation and no communication with counsel to demonstrate anything but a truly neglectful attitude. This factor weighs in favor of the defendant and dismissal with prejudice.

### 3. *Impact of reprosecution*

"The administration of justice depends heavily upon the prompt processing of criminal proceedings. Unreasonable or unnecessary delay can not only violate the rights of an accused under the Sixth Amendment but also undermine respect for law and thus harm the public." *United States v. Hillegas,* 578 F.2d 453, 456 (2d Cir.1978). "The [Speedy Trial] Act is intended both to protect the defendant from undue delay in the resolution of his case and to benefit society by ensuring quick resolution of criminal trials." *Mancuso,* 302 F.Supp.2d at 32.

This factor requires a court to consider the duration of the delay in question, *see United States v. Stayton,* 791 F.2d 17, 21 (2d Cir.1986) (dismissal with prejudice in light of enormity of delay of twenty-three months); *United States v. Cortinas,* 785 F.Supp. 357, 359 (E.D.N.Y. 1992) (dismissal without prejudice in light of minimal delay of seven days); and any attitude or pattern of laxity by the United States in complying with the

Act. *See United States v. Wilson,* 11 F.3d 346, 352 (2d Cir.1993); *United States v. Kottmyer,* 961 F.2d [569, 572 (6th Cir.1992) ] (dismissal without prejudice where there existed no pattern of intentional delay by United States); *United States v. Giambrone,* 920 F.2d at 181 (dismissal with prejudice in light of government's "extremely lax" attitude in case toward requirements of the Act). *United States v. Coleman,* 170 F.Supp.2d 321, 326 (N.D.N.Y.2001).

" '[A] violation of any of the Act's time limits ... negatively impacts on the administration of the Act.' A dismissal with prejudice will further the administration of justice by acting as 'a deterrent to other would-be offenders [and a] reaffirmation of Congress' basic purpose in enacting the Speedy Trial Act.' " *United States v. Bilotta,* 645 F.Supp. 369, 373 (E.D.N.Y.1986)(quoting *United States v. Caparella,* 716 F.2d 976, 981 (2d Cir.1983)). A fifteen month delay with no cognizable government activity between arrest and indictment is a classic example of a situation the Act was enacted to prevent. Overlooking, and thus to some extent condoning, this sort of neglectful, and rather cavalier, attitude towards the Speedy Trial clock would undermine administration of the Act.

The other consideration under this factor is the impact on the administration of justice, or more particularly the impact of the delay on defendant. This is often considered a separate or fourth factor for consideration. Regardless, a court must consider the "unexpressed factor of prejudice to the defendant." *United States v. Upton,* 921 F.Supp. 100 (E.D.N.Y.1995). "The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice of the defendant. The longer the delay, the

greater the presumptive or actual prejudice to the defendant in terms of his ability to prepare for trial . . . ." *Taylor,* 487 U.S. at 340, 108 S.Ct. 2413.

"Prejudice typically involves the effect that delay has on a defendant's ability to mount a defense." *Mancuso* 302 F.Supp.2d at 32 (citing *United States v. McCrudden,* 222 F.Supp.2d 352, 356 (E.D.N.Y.2002)). "But inordinate delay may also prejudice a defendant by interfering with his 'liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'" *Id.* (quoting *Taylor,* 487 U.S. at 340, 108 S.Ct. 2413). Mercier argues that this is what he suffered. Besides the uncertainty and anxiety which he and his family have felt since his arrest, the pretrial limitations on his travel have led to lost income and financial hardship. He was a long distance truck driver, and is now largely unable to work in that capacity.

Considering that administration of the Speedy Act would be undermined by reprosecution and the prejudice to the defendant as a result of this extraordinary delay, this factor weighs for the defendant and dismissal with prejudice.

Though the seriousness of the offense weighs in favor of dismissal without prejudice, that factor is substantially outweighed by the absence of any government activity in the case for fifteen months and the effects of reprosecution. Count 2 will be dismissed with prejudice.

**B.  Speedy Trial Act and Counts 1 and 3**

■ The Speedy Trial Act only requires dismissal of "such charge[ (s) ] against that individual contained in such complaint." 18 U.S.C. § 3162(a)(1). "[I]t does not prevent later prosecution for different crimes even if the 'subsequent charges . . . arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint.'" *Bilotta,* 645 F.Supp. at 371 (quoting *Napolitano,* 761 F.2d at 137).

The government argues that Count 1 and 3—the conspiracy charge and the possession charge on a new date (June 9, 2003)—are new charges against Mercier and not subject to dismissal. The government reads the recent Second Circuit case of *United States v. Gaskin* as stating a bright-line rule that "if the charge was not stated in the complaint and it appears in the indictment, the Speedy Trial Act does not apply to the additional charges." 364 F.3d 438, 453 (2d Cir.2004). The *Gaskin* court held that:

> when a complaint charge and an indictment charge involve overlapping or even identical facts, dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint. Under such circumstances, the charge in the indictment is simply not " 'such charge' " as was pleaded in " 'such complaint.' " *United States v. Napolitano,* 761 F.2d at 137 (quoting § 3162(a)(1)).

*Gaskin,* 364 F.3d at 453.

**1.  Gilding**

There is a recognized, though not often applied, exception to this rule—the gilding exception. Mercier argues that it applies here because Counts 1 and 3 demonstrate government gilding. Case law does not provide a definition of the gilding exception much beyond the dictionary definition of the word gilding.

Webster's Third New International Dictionary defines gilding as "embellishing." Webster's Collegiate Dictionary defines it as "unnecessary ornamentation." *See United States v. Oliver,* 683 F.Supp. 35, 38 (E.D.N.Y.1988) (citing Webster's Collegiate Dictionary). Thus, a gilded charge is one that merely annotates in more detail the same charge alleged in the initial accusatory instrument. *United States v. Bailey,* 111 F.3d 1229, 1236–1237 (5th Cir.1997). The Fifth Circuit, in *Bailey,* concluded that the misdemeanor and felony counts at issue in its case contained different elements, and were thus distinct charges, not gilded charges for Speedy Trial Act purposes. *Id.*

The Third Circuit in *United States v. Watkins,* which was cited by the Second Circuit in the *Gaskin* case, discussed the exception at length, but also declined to apply it. 339 F.3d 167, 175–78 (3d Cir. 2003). The court considered whether a substantive charge just gilded a conspiracy charge. The *Watkins* court interpreted *Bailey* as laying out an "elements test" in light of the application of the gilding exception in double jeopardy analysis. The Third Circuit declined to recognize the exception, but indicated that if it did, the exception would operate like the "elements" test in *Bailey. Id.* at 178. The court rejected a "same-proofs test" or a "transaction test"—dismissal if "the charges in the indictment are based on the same underlying conduct as the original complaint." *Id.* at 177–78.

The Second Circuit acknowledged the exception in *United States v. Napolitano* noting that there may be instances where dismissal is required because the indictment merely " 'gilds' an earlier charge" or sets forth a "mere difference in accusational dates." 761 F.2d 135, 138 (2d Cir.1985).

This mechanical approach most often results in maintenance of the charges. *See e.g., United States v. Cortinas,* 785 F.Supp. 357, 362 (D.N.Y.1992); *United States v. Velasquez,* 890 F.2d 717, 719–720 (5th Cir. 1989); *United States v. Archer,* 984 F.Supp. 321, 326 (E.D.Pa.1997).

The exception was applied, however, in *United States v. Bilotta,* 645 F.Supp. 369 (E.D.N.Y.1986). The charges at issue for comparison were both conspiracy charges but brought under different statutes. The court found that the superceding indictment was "simply a more detailed version of the crimes described in the complaint; it is the completed canvas of the painting first etched in the complaint." *Id.* at 371. This holding comports with the rule that the exception does not apply to charges which contain new elements. But the court went on to explain its conclusion that the government was engaged in gilding. The court's Speedy Trial analysis of the indictment was of the pleadings as a whole—as opposed to a element-by-element inquiry.

Even if these technical differences sufficed to satisfy the purposes of the Speedy Trial Act, a common sense comparison of the two documents and the particular circumstances of this case militate against an interpretation of the statute that would permit the government to split hairs in this manner. The prosecution has not explained except in the most technical terms how the conspiracies alleged in the superseding indictment can be distinguished from those described in the complaint; it has not even attempted to demonstrate any practical distinction between the two supposedly different plots alleged. Nor has it made a claim that it has acquired additional evidence, or even devised a new legal theory, that would explain why it waited a year and a half to present the

superseding indictment. Finally, its dilatory approach to this prosecution and its disregard of its obligations to the Court and the defendant provide further reason to doubt the good faith of the government. This subsequent prosecution should be barred because it is based on an indictment which merely 'gilds' an earlier charge.

*Bilotta*, 645 F.Supp. at 372 (internal citations and quotations omitted).

■ This approach to gilding is applicable in the present case despite the fact that the new charges contain additional elements. A common sense comparison of the two documents and the particular circumstances of this case militate against an interpretation of the statute that would permit the government to add charges simply to avoid the application of the Act. It is not likely that the Appellate Courts, including the Second Circuit in *Gaskin*, intended to be understood to say that District Courts should merely line up the elements of the individual charges and finding some left over in the subsequent pleading, determine that the Speedy Trial Act has not been violated. As the court in *Bilotta* related above, in some cases this would be to miss the forest for the trees. In some cases, like the instant case, the government may gild its case as a whole.

Here, Mercier was arrested alone on May 13, 2003. Peppin was arrested alone on June 9, 2003. However, the indictment charges both defendants with possession on both dates. In addition, the government framed the added conspiracy charge to encompass the dates of both transactions. However, the government concedes now, and knew when it framed the indictment, that the May 13, 2003 charge violated the Speedy Trial Act. These facts coupled with the dilatory prosecution of the case, make it difficult to avoid an inference of bad faith on the part of the government.

The inference of bad faith refers particularly to constructing the indictment, not the lack of prosecutorial action preceding it. The American Heritage Dictionary (Second Edition) defines gilding as to "give an often deceptively attractive or improved appearance." After all, gilding is actually a process of making a thing seem like something it is not.

The definition of gilding has room in it for more than just cases that simply reword the original charges, but also those that demonstrate bad faith efforts to avoid the Speedy Trial Act. If the exception does not contain room for the occasional egregious case, then the Act may regularly be avoided by adding new charges to indictments—whether or not they have merit.

The consequences of such a holding have been considered. A dismissal of Counts 1 and 3 should not be read to mean that the government must now be careful to add every possible charge at arrest or its initial indictment to avoid a Speedy Trial Act dismissal. "Indeed, justice is usually best served by discouraging hasty prosecutorial judgments with respect to aggravated charges." *Gaskin*, 364 F.3d at 455. It is held only that in cases like this one, where fifteen months pass with no government activity on a case, with no new information and no justification for the delay beyond stating that like some other cases this one was simply neglected, the government may not simply add factually related charges to avoid application of the Act.

Despite the government's argument to the contrary, dismissal of Counts 1 and 3 would not conflict with a comprehensive reading of *Gaskin*. Before noting that charges that add additional elements do more than gild the original charges the court stated: "We need not here decide whether there are any circumstances where we might apply the concept of gild-

ing to a Speedy Trial Act challenge." *Id.* at 456.

After laying out the relevant law and noting the exception, the court began its discussion of the Speedy Trial Act by noting not only the purpose of the Act, but what its purpose is not.

> We exercise such caution in the dismissal of criminal charges mindful that the purpose of the Speedy Trial Act is simply "to expedite the processing of pending criminal proceedings," not to supervise prosecutorial discretion in investigating and charging crimes not actually pending before the court. *United States v. Hillegas,* [578 F.2d 453, 456 (2d Cir.1978).] The distinction is of no small import. As *Hillegas* notes, "to invade the latter area might well involve the legislative and judicial branches in matters that fall primarily, if not exclusively, within the jurisdiction of the executive branch." *Id.* at 457.

*Gaskin,* 364 F.3d at 452.

The *Gaskin* court's concerns are not a problem here. The only intrusion into the exercise of executive discretion implicated in this case is the government's unbridled discretion to do nothing. Under the Act, that discretion is bridled. The government must act to drop the charges, seek stipulations or at least provide a court with a record of some activity of prosecutorial effort in a case so that a court might defer to it in a balancing process. None of that occurred here. The *Gaskin* court considered a record that revealed at least some government attention. *See Id.* at 450 (noting "the docket sheet indicates that in early August 1999, Gaskin changed counsel, and through October of that year, the parties wrangled over the conditions of Gaskin's continued release."). The government was at least actively involved in the case. *Gaskin* involved prosecution of an extensive conspiracy that spanned a full year and involved numerous participants including couriers that traveled across the United States. Here the government took no action where it was required to prosecute a small organization that it charges operated in a relatively local area for approximately a month. Refusing to hold that this is permissible does not constitute interference with executive discretion beyond the required oversight provided in a plain reading of the statute.

Therefore, Counts I and 3 will be dismissed because the governments dilatory approach to this case and the disingenuous nature of the added charges compel an inference that the government gilded the indictment, at least in part, to avoid the Speedy Trial Act. To the extent that this holding expands the previously undefined contours of the gilding exception, it is believed that there is little risk that this will promote judicial interference with prosecutorial discretion. On the facts of this case, the exception still has little breadth as almost any government activity would have served to negate the inference of bad faith on the part of the government.

### 2. *With or Without Prejudice*

■ As with the dismissal of Count 2, 18 U.S.C. § 3162(a)(1) requires consideration of three factors to determine whether the dismissal should be with or without prejudice. The same analysis of the three factors discussed above for Count 2 must be applied to Counts 1 and 3.

As to seriousness, Count 1 states a conspiracy charge and adds to the seriousness of the crime charged. As noted above, this seriousness weighs in favor of dismissal without prejudice. The second factor requires consideration of the facts and circumstances of the delay. The fifteen month delay due to government neglect is now coupled with what is found to be

271

gilding of an indictment. This factor weighs in favor of dismissal with prejudice.

As for the effects of reprosecution, the Speedy Trial Act is undermined, as is the public faith in government, when disingenuous changes in pleadings may be readily employed to circumvent the Act. That Mercier was the subject of the gilded indictment is clearly prejudicial to him. This third factor also weighs in favor of the defendant and dismissal with prejudice. Accordingly, even considering the added gravity of the charge in Count 1, the balance tips in favor of dismissal with prejudice considering the weight of the other two factors. Counts 1 and 3 will be dismissed with prejudice.

## IV. CONCLUSION

The fifteen month delay due to complete government neglect and the effects of reprosecution compel dismissal of Count 2 with prejudice. Counts 1 and 3 represent gilding of the original complaint and are therefore subject to dismissal pursuant to § 3162(a)(1). Counts 1 and 3 must also be dismissed with prejudice due to the length of the delay, the government's gilding of the indictment and the effects of reprosecution.

If the Speedy Trial Act does not direct the dismissal of this indictment against Mercier with prejudice, it is difficult to envision a fact pattern which would require such a dismissal. The Act would become quite meaningless—a paper tiger with no teeth.

It must be emphasized that this case presents a very unique set of facts. Fortunately, the government seldom ignores a case for fifteen months after charges are filed. Dismissal under the Act will continue to be very, very rare.

Accordingly, it is

ORDERED that Counts 1, 2, and 3 of the indictment as applied to defendant Gilles Mercier are dismissed with prejudice.

IT IS SO ORDERED.