Electronically Filed
Supreme Court
SCWC-15-0000461
20-OCT-2017
08:47 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

GEORGE FUKUOKA,
Petitioner/Defendant-Appellant.

SCWC-15-0000461

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000461; 2DTA-14-01165)

OCTOBER 20, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

The district court in this case dismissed without prejudice the charges against Petitioner George Fukuoka based upon a violation of Rule 48 of the Hawai'i Rules of Penal Procedure (HRPP). On appeal, the Intermediate Court of Appeals

1

(ICA) rejected Fukuoka's contention that the district court abused its discretion in not dismissing the case with prejudice. Fukuoka on certiorari to this court reasserts that the charges were not serious as a matter of law and that the State of Hawai'i should have been precluded from reinstituting prosecution. In our review of the ICA's decision, we consider the principles that guide a trial court in exercising its discretion to dismiss a case with or without prejudice for a violation of HRPP Rule 48. We conclude that the ICA did not err and affirm its Judgment on Appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2014, George Fukuoka was arrested for operating a vehicle under the influence of an intoxicant (OVUII). He posted bail and was ordered to appear at the District Court of the Second Circuit, Moloka'i Division, (district court) on October 28, 2014.

On October 22, 2014, the State of Hawai'i filed a five-count complaint. The counts were as follows: 1) OVUII, in violation of Hawaii Revised Statutes (HRS) §§ 291E-61(a)(1) and/or 291E-61(a)(3) and 291E-61(b) (Supp. 2012); 2) inattention to driving, in violation of HRS § 291-12 (Supp. 2012); 3) reckless driving, in violation of HRS § 291-2 (2007); 4) duty upon striking an unattended vehicle or other property, in

2

violation of HRS § 291C-15 (Supp. 2012); and 5) lack of due care, in violation of Maui County Code (MCC) § 10.52.010 (1965).[1]

Fukuoka appeared at district court on October 28, 2014 for arraignment and entered pleas of not guilty to all of the charges.[2] The district court set a pretrial conference for November 25, 2014. At the pretrial conference, Fukuoka requested that he be permitted to issue subpoenas duces tecum for the personnel and internal affairs files of Maui Police Department (MPD) officers involved in the underlying incident.

---

[1] Counts 1 through 3 are classified by the Hawaii Revised Statutes as petty misdemeanors. See HRS § 701-107(4) (Supp. 2013) (an offense is a petty misdemeanor if it is so designated or if it provides that persons convicted thereof may be sentenced to a term of imprisonment not to exceed 30 days); HRS § 291E-61(b)(1) (providing maximum possible term of 5 days' imprisonment for a first offense OVUII); HRS § 291-12 (providing maximum possible term of 30 days' imprisonment for inattention to driving); HRS § 291-2 (providing maximum possible term of 30 days' imprisonment for reckless driving).

Count 4 is classified by the Hawaii Revised Statutes as a violation punishable by fines. See HRS § 291C-161 (2007 & Supp. 2012) (identifying as a violation "violat[ing] any of the provisions" of HRS chapter 291C and imposing a fine not to exceed $200 for a first offense); HRS § 291C-15 (providing trauma system special fund surcharge of up to $100 for violating duty upon striking an unattended vehicle or other property in addition to other penalties imposed by HRS chapter 291C).

Count 5 constitutes a violation punishable by a fine of not more than $100 for a first offense and not more than $250 for every subsequent offense. See MCC § 10.72.020 (1983) (defining penalty for violation) (last amended 1983); MCC § 10.08.050 (1980) (identifying as a violation "do[ing] any act forbidden or fail[ing] to perform any act required" by title 10 of the Maui County Code) (last amended 1980).

[2] The Honorable Adrianne N. Heely presided over the preliminary and discovery proceedings in this case. The Honorable Kirstin M. Hamman presided over the motion to dismiss the complaint with prejudice and the motion to reconsider the court's dismissal without prejudice.

The court issued an order on December 12, 2014, permitting Fukuoka to issue the subpoenas, and the returns of service on two subpoenas were filed three days later.

On December 18, 2014, the County of Maui (County), on behalf of MPD, moved to quash the subpoenas (Motion to Quash). The hearing date of December 23, 2014 was continued to January 27, 2015; in the meantime, MPD filed documents under seal for in camera review. At the scheduled hearing, the district court continued the matter initially to February 10, 2015 and then later to February 20, 2015.

At a status conference on February 20, 2015, Fukuoka and the County agreed to a protective order regarding the files to be produced pursuant to the subpoenas. Later that day, the district court filed an order granting in part and denying in part the Motion to Quash. The court also set a March 24, 2015 trial date.

On February 24, 2015, Fukuoka filed a proposed sua sponte order resetting the trial date, which indicated that the new trial date was necessary due to a previously scheduled trial. Three days later, the district court entered the order, rescheduling the trial from March 24, 2015 to April 14, 2015.

On the date of trial, Fukuoka filed with the district court a motion to dismiss the complaint with prejudice (Motion

4

to Dismiss) on the ground that his rights under HRPP Rule 48 had been violated.[3]  Fukuoka contended that the case should be dismissed because 198 days had elapsed between his September 28, 2014 arrest and the April 14, 2015 trial date and that no HRPP Rule 48 exclusions applied to that period.  Fukuoka also argued, pursuant to the three-factor test set forth by this court in State v. Estencion, 63 Haw. 264, 625 P.2d 1040 (1981), that the case should be dismissed with prejudice.  Fukuoka submitted that the first Estencion factor, the seriousness of the offense, weighed heavily in his favor because all of the charges against him were petty misdemeanors, which are not "serious offenses" in comparison to full misdemeanors.  Fukuoka maintained that his position was supported by the fact that the constitutional right to a jury trial did not attach to a first OVUII offense because it is a petty offense and not constitutionally serious.

     As to the remaining factors, Fukuoka submitted that the second factor, the facts and circumstances of the case that led to the dismissal, also weighed in his favor because the delay before trial was the fault of the district court for not timely resolving the issues related to the subpoenas duces

---

[3]     Fukuoka also argued that the case should be dismissed because of a violation of his constitutional speedy trial right.  This issue is not raised in Fukuoka's application for a writ of certiorari, and therefore it is not addressed.

tecum.  The third factor, impact of reprosecution on the administration of HRPP Rule 48 and on the administration of justice, also weighed in his favor, Fukuoka argued, because a reprosecution would frustrate the fair administration of HRPP Rule 48 and of justice.

The State argued in response that there was no HRPP Rule 48 violation because much of the elapsed time period should be charged to Fukuoka as he requested pretrial continuances, he had never requested that the district court set a trial date, and the State had never requested a continuance.  The State reserved argument on whether the dismissal should be with or without prejudice until the district court ruled on whether there was a violation of HRPP Rule 48.  Later that day, the court issued an order dismissing the case without prejudice (Order Dismissing Without Prejudice).

Fukuoka filed a motion to reconsider the court's dismissal without prejudice (Motion to Reconsider).  He argued that petty misdemeanors are not serious offenses as a matter of law.  Fukuoka also contended that the facts and circumstances leading to dismissal should be viewed in his favor because many of the delays were due to the County's Motion to Quash.

In response, the State maintained that the delay was at least partly attributable to the defense.  The State

submitted that the impact of reprosecution on the administration of justice weighed in its favor because of the short length of the delay and because the reasons for the delay were proper. As for the seriousness of the offense, the State alluded to various circumstances of the incident, which the defense challenged.[4]

The district court denied the Motion to Reconsider. In its oral ruling, the court stated that it was not taking into consideration circumstances regarding the incident that had been stated by the prosecution at the hearing. The district court also stated that "given the short delay[, it did] not find that there would be a significant impact of reprosecution under [HRPP] Rule 48." An Order Denying Motion to Reconsider was entered at the conclusion of the hearing.

Thereafter, the district court issued findings of fact, conclusions of law, and an order granting in part and denying in part the Motion to Dismiss (Findings of Fact and Conclusions of Law). The court found that Fukuoka's case had been pending disposition for 198 days and that trial would have commenced within the 180-day deadline but for the court's sua

_____

[4] The State contended that "this was a serious accident" involving "blood at the scene" and that a windshield that "was thrown quite far." The State also suggested that Fukuoka fled the scene of the accident. In rebuttal, Fukuoka argued that these assertions were hearsay and that the State did not have a declaration of an officer to support the assertions.

sponte order continuing the trial date. Citing HRPP Rule 48(c), the district court stated that a delay due to court congestion, absent exceptional circumstances, is not an excludable time period. The court noted that the order resetting the trial date did not indicate any exceptional circumstances for the resetting of trial. Thus, finding no applicable excludable time periods under HRPP Rule 48(c), the district court concluded that HRPP Rule 48 had been violated because trial had not commenced with 180 days of Fukuoka's arrest and the setting of bail.

The district court then addressed whether dismissal of the case would be with or without prejudice. The court stated that it had considered the three Estencion factors. First, as to the seriousness of the offenses, the court reasoned that the charges were serious in nature, the offense of intoxicated driving can result in significant harms, the other charges were tied to the OVUII offense, and the court would not extend the constitutional jury trial right analysis to its determination under HRPP Rule 48.

With respect to the facts and circumstances of the case that led to the dismissal, the district court found that it was well within the right of the County to file a Motion to Quash the subpoenas duces tecum. The court noted that the prosecution did not request any continuances nor have control

8

over the resolution of the issues relating to the Motion to Quash.  Additionally, the district court determined that, but for the court's sua sponte order continuing the trial to April 14, 2015, the trial would have commenced within the time period required by HRPP Rule 48.  As to this factor, the court found that it weighed in favor of dismissal without prejudice.

Lastly, as to the impact of reprosecution, the district court noted that there had been no showing of prejudice to Fukuoka and that reprosecution furthers the public's interest in bringing defendants charged with crimes to trial.  The court found that the 18-day delay was not substantial.  The court concluded that the seriousness of the offenses and the facts and circumstances that led to the dismissal outweighed any impact of reprosecution on the administration of HRPP Rule 48 and on the administration of justice.  Accordingly, the district court determined that the dismissal should be without prejudice.

Fukuoka appealed to the ICA from both the Order Dismissing Without Prejudice and the Order Denying Motion to Reconsider.  Fukuoka principally focused his argument on the contention that petty misdemeanors should be non-serious as a matter of law under the first Estencion factor.  The State responded that there was no abuse of discretion because the district court had properly applied the holding of Estencion,

and it disputed Fukuoka's argument that petty misdemeanors should be categorically non-serious.  In reply, Fukuoka contended that seriousness in the context of HRPP Rule 48 is linked to the constitutional jury trial right.  Fukuoka also argued that the district court's conclusion that the prosecution had no control over the process of resolving the subpoenas and the Motion to Quash improperly relieved the prosecution from its shared responsibility of carrying out HRPP Rule 48 requirements.

In a Summary Disposition Order (SDO) affirming the Order Dismissing Without Prejudice,[5] the ICA stated that it had already rejected a mechanical per se rule for the "seriousness of the offense" factor, citing State v. Kim, 109 Hawai'i 59, 66, 122 P.3d 1157, 1164 (App. 2005).  Rather, the ICA concluded that "the maximum possible punishment is merely one measure of the gravity of the offense" and that the trial court may consider the combination of the charges brought against the defendant. The ICA noted that the district court had determined that "although the charges were petty misdemeanors, . . . the offenses were inextricably tied to the OVUII charge, and that OVUII was a serious offense because it could result in

---

[5]      The ICA's SDO can be found at State v. Fukuoka, No. CAAP-15-0000461, 2016 WL 5107025, 2016 Haw. App. LEXIS 405 (Sept. 20, 2016) (SDO).

10

significant harm to life and property."  The ICA also concluded

that the seriousness of an offense with respect to HRPP Rule 48

is not related to whether the offense is constitutionally petty

and thus "does not determine whether an offense is serious under

Estencion."  Therefore, the ICA held that the district court did

not abuse its discretion in finding that the offenses were

serious for purposes of HRPP Rule 48 and that the court did not

err in dismissing without prejudice the charges against Fukuoka.[6]

In his application for a writ of certiorari, Fukuoka

asserts that petty misdemeanors are categorically non-serious

offenses under Estencion, that the district court erred in its

determination that the facts and circumstances weighed in favor

of dismissal without prejudice, and that the court erred in

concluding that these two Estencion factors outweighed any

impact of the third factor.  Accordingly, Fukuoka contends that

the district court abused its discretion in dismissing his case

without prejudice.

## II. STANDARD OF REVIEW

We review a trial court's decision to dismiss a case

with or without prejudice for violation of HRPP Rule 48 for

---

[6]     The ICA also concluded that Fukuoka had waived any challenge to
the Order Denying Motion to Reconsider and determined that his remaining
arguments were without merit.

abuse of discretion.  See State v. Estencion, 63 Haw. 264, 269,
625 P.2d 1040, 1044 (1981).  An abuse of discretion occurs when
"the decisionmaker 'exceeds the bounds of reason or disregards
rules or principles of law or practice to the substantial
detriment of a party.'"  State v. Kony, 138 Hawaiʻi 1, 8, 375
P.3d 1239, 1246 (2016) (quoting State v. Vliet, 95 Hawaiʻi 94,
108, 19 P.3d 42, 56 (2001)).

### III.  DISCUSSION

### A.  HRPP Rule 48 and Estencion

HRPP Rule 48 is intended to "ensure an accused a
speedy trial, which is separate and distinct from [the]
constitutional protection to a speedy trial."  State v.
Estencion, 63 Haw. 264, 268, 625 P.2d 1040, 1043 (1981).
Subsection (b) of HRPP Rule 48 provides in relevant part as
follows:

> (b) By court.  Except in the case of traffic offenses
> that are not punishable by imprisonment, the court shall,
> on motion of the defendant, dismiss the charge, with or
> without prejudice in its discretion, if trial is not
> commenced within 6 months:
>
> (1) from the date of arrest if bail is set or from
> the filing of the charge, whichever is sooner, on any
> offense based on the same conduct or arising from the
> same criminal episode for which the arrest or charge was
> made . . . .

HRPP Rule 48(b) (2000) (emphasis added).  Thus, under HRPP Rule
48, a court must dismiss the charges upon the defendant's motion
when trial has not commenced within six months from the date of

12

arrest if bail is set or from the filing of the charge, whichever is sooner, taking into account any periods of delay excluded under the rule.  See HRPP Rule 48(b)(1), (c) (2000).

Though dismissal for a violation of HRPP Rule 48 is mandatory, whether to dismiss charges with or without prejudice is subject to the discretion of the court.  HRPP Rule 48(b).  We have adopted factors from the federal Speedy Trial Act to guide our courts in exercising this discretion.  Estencion, 63 Haw. at 269, 625 P.2d at 1044.  In determining whether to dismiss the case with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and the circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  Id. (quoting 18 U.S.C.A. § 3162(a)(1) (1969, Supp. 1980)).[7]

---

[7]    Courts of this jurisdiction that have interpreted the three factors (including the ICA in this case) have considered federal caselaw analyzing the language of the federal Speedy Trial Act from which the three-part Estencion test was adopted.  See, e.g., State v. Coyaso, 73 Haw. 352, 357, 833 P.2d 66, 68-69 (1992); State v. Hern, 133 Hawai‘i 59, 64-65, 323 P.3d 1241, 1246-47 (App. 2013); State v. Kim, 109 Hawai‘i 59, 62-64, 122 P.3d 1157, 1160-62 (App. 2005).  Because the Estencion court adopted its analysis from analogous provisions of the federal Speedy Trial Act, this court likewise considers federal caselaw regarding those provisions in interpreting the three Estencion factors.  There are, however, significant differences between HRPP Rule 48 and the federal Speedy Trial Act with respect to calculating

(continued . . .)

Although not set forth as one of the three enumerated factors, "prejudice to the defendant may be a relevant consideration in the trial court's decision to dismiss with or without prejudice" under HRPP Rule 48. State v. Coyaso, 73 Haw. 352, 357, 833 P.2d 66, 69 (1992). However, an inquiry into prejudice to the defendant "will most often be inherent in the court's examination of the impact of reprosecution on the administration of [HRPP] Rule 48 and the administration of justice." Id. We have also concluded that "the trial court may consider other factors it finds to be relevant to the case before it" beyond those enumerated in Estencion. Id.

In analyzing whether to dismiss a case with or without prejudice under HRPP Rule 48 and Estencion, the trial court must "clearly articulate the effect of the Estencion factors and any other factor it considered in rendering its decision." State v. Hern, 133 Hawai'i 59, 64, 323 P.3d 1241, 1246 (App. 2013).[8]

---

(. . . continued)

whether a violation occurred, including the length of elapsed time that results in a violation and the periods of delay excluded from calculation.

[8]     In Hern, the ICA concluded that the trial court had abused its discretion when it dismissed the case without prejudice based on the court's "typical practice" of HRPP Rule 48 dismissals and because the trial court failed to make specific findings with respect to the Estencion factors. 133 Hawai'i at 61, 323 P.3d at 1243.

Accordingly, the court must explain the effect of the Estencion factors on its reasoning to dismiss a charge with or without prejudice. Id. The court is not required, however, to make a determination as to whether each individual factor weighs in favor of dismissal with or without prejudice.[9]

      The trial court must therefore provide an "explanation of its consideration of the Estencion factors[,]" and any other factors it considered, "and the basis for its decision." See id. at 65, 323 P.3d at 1247. Accordingly, to address the merits of Fukuoka's claim on certiorari, we consider general principles applicable to each of the Estencion factors, review the effect of the Estencion factors on the district court's decision, and then determine whether the district court abused its discretion in dismissing the case without prejudice.

### i. Seriousness of the Offense

### a. Relevant Considerations

      Fukuoka's argument on certiorari relates primarily to the first Estencion factor, seriousness of the offense.

---

[9] Additionally, even if the trial court elects to make such a determination with regard to some or all of the Estencion factors, the court may conclude that a factor does not favor the prosecution or the defense. See United States v. Montecalvo, 861 F. Supp. 2d 110, 116 (E.D.N.Y. 2012) (concluding that the seriousness of the offense factor "in this case does not weigh in favor of either party").

Specifically, Fukuoka contends that petty misdemeanors are categorically non-serious offenses for purposes of determining whether to dismiss a case with or without prejudice for a violation of HRPP Rule 48.

The first Estencion factor requires the court to consider "the seriousness of the offense." Estencion, 63 Haw. at 269, 625 P.2d at 1044. However, considering the seriousness of an offense does not mean that a court simply determines whether the offense is serious or not serious. Courts are reluctant to identify any crime as "non-serious." See United States v. Montecalvo, 861 F. Supp. 2d 110, 114-15 (E.D.N.Y. 2012) (observing that a review of the caselaw concerning the seriousness of the offense factor reveals "very few cases that deem a crime 'non-serious' for Speedy Trial Act purposes"); United States v. Peppin, 365 F. Supp. 2d 261, 264 (N.D.N.Y. 2005) (reasoning in context of the seriousness of the offense factor that "[c]ourts are reluctant to declare any federal crime . . . as 'not serious'").

For this reason, the inquiry into the seriousness of the offense is "more complex than awarding a 'yes' or 'no' determination of seriousness." Peppin, 365 F. Supp. 2d at 264. Rather, offenses vary in seriousness, and whether an offense is more or less serious will depend on the particular charges in a

given case.  United States v. Mancuso, 302 F. Supp. 2d 23, 26 n.1 (E.D.N.Y. 2004) (noting that "[a]ny felony charge is serious" but observing that "there are degrees of seriousness" for purposes of the first factor).

Determining the relative seriousness of an offense is consistent with the wording of the factor itself, which requires that the court consider the seriousness of the offense rather than whether an offense is serious or non-serious.  See Estencion, 63 Haw. at 269, 625 P.2d at 1044.  Analyzing the relative seriousness of the offense rather than making a categorical determination of "serious" or "non-serious" also facilitates a more nuanced balancing of the three Estencion factors.

Thus, although every crime may be considered "serious" in a general sense, the trial court in considering the first Estencion factor should determine the relative seriousness of the particular offense at issue, i.e., whether the offense is more serious or less serious for purposes of dismissal under HRPP Rule 48 and not whether an offense is "serious" or "non-serious."  See United States v. Pierce, 17 F.3d 146, 149 (6th Cir. 1994) (rejecting a "mechanical test" based on federal sentencing guidelines "to label an offense 'serious' or 'not serious'" and requiring courts considering the seriousness of

the offense to "carefully consider[]" the "gravity" of the offense); see also State v. Kim, 109 Hawai'i 59, 62-64, 122 P.3d 1157, 1160-62 (App. 2005) (rejecting the argument that felonies are categorically not serious for purposes of HRPP Rule 48 when there are no exacerbating circumstances such as violence).

Relevant caselaw likewise shows that rather than deem certain classes of offenses to be categorically serious or non-serious, the trial court should consider whether the individual offenses charged are more serious or less serious by looking to a variety of factors relating to the individual offense. The trial court may consider, for example, the possible penalties for the offense charged. See, e.g., Kim, 109 Hawai'i at 63-64, 122 P.3d at 1161-62 (in considering seriousness factor, noting that charged drug offense carried possible sentence of five years' imprisonment); United States v. Koory, 20 F.3d 844, 847 (8th Cir. 1994) (offenses were more serious based in part on "the length of the applicable minimum and maximum sentences"). Consideration of an offense's possible penalty may include a review of both the possible term of imprisonment and other penalties that may be implicated following a finding of guilt. See, e.g., Montecalvo, 861 F. Supp. 2d at 115 (observing large financial sum forfeited by racketeering defendants in considering the seriousness of the offense).

Significantly, a trial court considering whether an offense is more or less serious for purposes of HRPP Rule 48 may also look to the nature of the offense charged. See, e.g., United States v. Medugno, 233 F. Supp. 2d 184, 186 (D. Mass. 2002) (witness tampering and intimidation offenses were serious because they involved obstruction of justice, "a crime that strikes at the very heart of our justice system"); United States v. Munlyn, 607 F. Supp. 2d 394, 398-99 (E.D.N.Y. 2009) (in considering the seriousness of possession of a firearm as a convicted felon, noting that offense had been deemed a "crime of violence" because the "possession of a gun by its nature gives rise to a risk of its use in violence" (quoting United States v. Dillard, 214 F.3d 88, 94 (2d Cir. 2000))); Montecalvo, 861 F. Supp. 2d at 116 ("the non-violent nature" of a mail fraud conspiracy charge "is a factor to take into consideration and does weigh against the seriousness of [the defendant's] offense").

In evaluating seriousness, a trial court may also consider the combination of charges and the relation among multiple charges. See, e.g., Koory, 20 F.3d at 847 (noting the fact of multiple charged felonies in considering the seriousness of the offense factor); United States v. Hastings, 847 F.2d 920, 925 (1st Cir. 1988) (noting that defendant was indicted on

multiple drug and weapons charges and reasoning that the "presence of several such charges in this case . . . militates strongly against dismissal with prejudice").

Additionally, although the trial court may consider the nature of the offense charged, the inquiry into seriousness generally centers on the charge, rather than on the underlying facts of the particular case. See Mancuso, 302 F. Supp. 2d at 26 n.1 (the seriousness factor "ordinarily focuses solely on the charge rather than, e.g., the strength of the government's case or the likely outcome of the proceedings," because "[t]o do otherwise would inordinately complicate and extend the analytical process"). Focusing on the charge rather than on the underlying facts is appropriate because, by the very nature of the HRPP Rule 48 violation, it is likely that evidence has yet to be proffered and analyzed for admissibility under the Hawaii Rules of Evidence and the state and federal constitutions; as a result, such evidence may not have been tested for reliability or accuracy.

Permitting the State and the defendant to present evidence on the underlying facts of the case, and requiring the court to determine whether these facts weigh in favor of dismissal with or without prejudice, would also unnecessarily complicate and lengthen proceedings that are intended to

"relieve congestion in the trial court" and to "advance the efficiency of the criminal justice process."  Estencion, 63 Haw. at 268, 625 P.2d at 1043 (discussing the purposes of HRPP Rule 48).[10]  However, when the charge itself includes information pertinent to the seriousness inquiry, such information may be relied upon by the trial court.  See, e.g., State v. Pulse, 83 Hawai'i 229, 239, 925 P.2d 797, 807 (1996) (concluding that circuit court did not abuse its discretion, when it considered that the charge involved assaultive behavior with a firearm).[11]

Fukuoka's argument in support of a categorical rule as to misdemeanor and petty offenses for purposes of an HRPP Rule

---

[10]    The proceedings in this case are illustrative of the complications inherent in relying on the underlying facts of a case when analyzing the seriousness of the offense factor.  Although no evidence was proffered or admitted with regard to Fukuoka's Motion to Dismiss, the State contended at the hearing on the Motion to Reconsider that the seriousness of the offense factor weighed in favor of dismissal without prejudice because "this was a serious accident" involving "blood at the scene" and a broken windshield; the State also suggested that Fukuoka fled the scene of the accident.  In rebuttal, Fukuoka argued that this was "hearsay, double hearsay."  We do not address this issue because the district court expressly disavowed reliance on these allegations regarding the incident in its oral ruling denying the Motion to Reconsider.  However, we observe that permitting the proceedings to devolve into a trial-like hearing on the merits would run counter to the purposes of HRPP Rule 48.

[11]    See also Peppin, 365 F. Supp. 2d at 264 (reasoning that the defendant was charged with possession of marijuana with intent to distribute and noting that "[t]he drug at issue is . . . an arguably less serious drug than heroin, cocaine or methamphetamine"); Koory, 20 F.3d at 847 (where the defendant was charged with possession of cocaine with intent to distribute within 1,000 feet of an elementary school, seriousness of the offense weighed in favor of dismissal without prejudice in part given proximity of the offense to a school).

48 violation is misguided. First, although an offense's classification as a misdemeanor or felony and the offense's possible penalty are a significant part of a court's determination of the seriousness of an offense, a variety of factors should be considered in determining whether the offense is more serious or less serious, as discussed above. See, e.g., Pulse, 83 Hawai'i at 239, 925 P.2d at 807 (holding no abuse of discretion that the trial court, when considering seriousness factor, stated that the case involved a Class A felony, "the most serious level of felony" and that the nature of the charge involved assaultive conduct with a firearm). HRPP Rule 48 is best served by a comprehensive approach in which the trial court evaluates the relative seriousness of an offense based on several factors, rather than determining whether one single aspect of the charge renders an offense "serious" or "non-serious." See Mancuso, 302 F. Supp. 2d at 26 n.1.

Second, we are not persuaded by Fukuoka's argument that an offense's possible sentence should play a dispositive role as to the first factor because of a sentence's significance in constitutional jury-trial-right jurisprudence. Whether the right to a jury trial attaches to an offense may be considered

for purposes of determining whether an offense is more serious or less serious under the first Estencion factor.[12]  However, fully importing jurisprudence on the constitutional jury trial right into an analysis regarding a Hawai'i Rule of Penal Procedure is not warranted.  The right provided by HRPP Rule 48 is intended to "ensure an accused a speedy trial."  Estencion, 63 Haw. at 268, 625 P.2d at 1043.  "[I]ts purpose is also in furtherance of policy considerations to relieve congestion in the trial court, to promptly process all cases reaching the courts, and to advance the efficiency of the criminal justice process."  Id.  In contrast, the purpose of the constitutional jury trial right is to, inter alia, "prevent[] miscarriages of justice," "assur[e] that fair trials are provided for all defendants," and "mak[e] judicial or prosecutorial unfairness less likely."  See Duncan v. Louisiana, 391 U.S. 145, 157-58

---

[12]    The jury trial right provided for by the Hawai'i Constitution attaches only to "serious crime[s]."  State v. Wilson, 75 Haw. 68, 73, 856 P.2d 1240, 1243 (1993) (deeming the relevant inquiry for constitutional jury trial right as whether an offense "is a petty versus serious crime").  To determine whether an offense is constitutionally serious thus guaranteeing the right to trial by jury, courts look to "(1) treatment of the offense at common law; (2) the gravity of the offense; and (3) the authorized penalty." Id. at 74, 856 P.2d at 1244 (citing State v. O'Brien, 68 Haw. 38, 41-43, 704 P.2d 883, 885-87 (1985)).  Thus, to the extent that an offense's categorization as a crime entitling a defendant to a jury trial is indicative of its "seriousness" within the meaning of Estencion, the fact that an offense has been deemed of sufficient constitutional gravity to entitle one to a jury trial may be considered in the context of the first Estencion factor.

(1968) (identifying right to jury trial as a fundamental right applicable to the states through the Fourteenth Amendment).[13]

In sum, when considering the seriousness of the offense, the trial court should conduct a particularized inquiry that may include considerations of the possible penalty, the nature of the offense charged, the combination of charges, and other factors that weigh on the seriousness of a particular offense. Though an offense's possible sentence and categorization as a misdemeanor or petty offense are relevant to the inquiry, HRPP Rule 48 and the first Estencion factor require the court to consider the charges on a case-by-case basis.

b. **District Court's Application of the Seriousness of the Offense Factor**

The dismissed charges in this case included OVUII, inattention to driving, reckless driving, duty upon striking an unattended vehicle or other property, and lack of due care. In its Findings of Fact and Conclusions of Law, the district court

_____

[13] As noted by the ICA, the difference between the constitutional jury trial right and HRPP Rule 48 is further demonstrated by this court's prior rulings that an OVUII offense is subject to the protections of HRPP Rule 48 but that a right to trial by jury does not attach to a first-offense OVUII. Compare State v. Nakata, 76 Hawaiʻi 360, 374, 878 P.2d 699, 713 (1994) (holding that the constitutional jury trial right does not attach to a first-offense OVUII based on determination that the offense is "constitutionally petty"), with State v. Lau, 78 Hawaiʻi 54, 60, 890 P.2d 291, 297 (1995) (holding that HRPP Rule 48 applies to driving under the influence of intoxicating liquor offenses because it is a crime that subjects an individual to a possible term of imprisonment).

concluded that "the charges are serious in nature." The court stated that "commission of the crime of OVUII can result in significant harm to life and property by way of vehicular accidents due to intoxicated driving." The court also referenced the multiple charges, stating that "[t]he remaining charges in this case are inextricably tied to the charge of OVUII." Lastly, the court determined that although OVUII is a petty offense for purposes of the constitutional right to a jury trial, it would "not extend the same analysis" for determining the gravity of OVUII for purposes of HRPP Rule 48.

As stated, in evaluating the seriousness of the offense, the trial court may consider possible penalties, the nature of the offense charged, the combination of charges, and other factors. Here, the district court observed that intoxicated driving poses a safety risk to others on the highways and that the OVUII offense was linked to the other four charges in this case. The district court also correctly rejected the contention that the charged offenses were not serious merely because they did not entitle Fukuoka to a jury trial. Thus, the district court explained its reasoning in

relation to the first <u>Estencion</u> factor, applying relevant

considerations in concluding that the offenses were "serious."[14]

### ii. Facts and Circumstances of the Case that Led to Dismissal

#### a. Relevant Considerations

Under the second <u>Estencion</u> factor, a court in

determining whether to dismiss a case with or without prejudice

for violation of HRPP Rule 48 must consider "the facts and the

circumstances of the case which led to the dismissal."

<u>Estencion</u>, 63 Haw. at 269, 625 P.2d at 1044.  In evaluating the

facts and circumstances of the case, the court should focus on

"the culpability of the conduct that led to the delay."  <u>United

States v. Cano-Silva</u>, 402 F.3d 1031, 1036 (10th Cir. 2005); <u>see</u>

<u>United States v. Peppin</u>, 365 F. Supp. 2d 261, 265 (N.D.N.Y.

2005) (under the facts and circumstances factor, "[t]he inquiry

thus turns to who is responsible for the delay and for what

reasons"); Wayne R. LaFave et al., <u>Criminal Procedure</u> 1072 (6th

---

[14] The district court appears to have made a categorical determination that the offenses charged were "serious."  However, rather than give a "'yes' or 'no' determination of seriousness[,]" <u>Peppin</u>, 365 F. Supp. 2d at 264, this first <u>Estencion</u> factor obliges courts to look to a variety of considerations to determine the relative seriousness of an offense, <u>see</u> <u>Pulse</u>, 83 Hawai'i at 239, 925 P.2d at 807.  <u>See</u> <u>supra</u> III(A)(i)(a).  Although the district court examined some of these considerations, it did not indicate the relative seriousness of the offenses.  Such a determination would assist the trial court in determining whether the balance of the factors weighs in favor of allowing or precluding reprosecution, <u>see</u> <u>infra</u> III(B), and the appellate court in its review of that determination.

ed. 2017) (observing that determining whether to dismiss a case with or without prejudice for violation of federal Speedy Trial Act involves weighing of "government 'fault,' and defense 'fault'"); State v. Pulse, 83 Hawai'i 229, 239, 925 P.2d 797, 807 (1996) (concluding that circuit court did not abuse its discretion, when it considered as a factor that the record did not indicate that the State sought to delay the trial).

Relevant considerations within this factor may include whether the delay was caused by the State's neglect or deliberate misconduct. United States v. Bert, 814 F.3d 70, 80 (2d Cir. 2016); see United States v. James, 861 F. Supp. 151, 156 (D.D.C. 1994) (dismissing case with prejudice when federal Speedy Trial Act violation was based on prosecution's failure to comply with the rule relating to motions to dismiss and noting that the court "cannot condone the Government's failure to recognize and follow the requirements of the Federal Rules of Criminal Procedure"). Similarly, the court may consider whether the delay was caused by the defendant's conduct when analyzing this factor. In United States v. Taylor, for example, the Supreme Court concluded that a defendant's "culpable conduct" in failing to appear for trial and his flight before the case was to be tried prevented the trial from going forward in a timely fashion in the first instance and was "certainly relevant as

'circumstances of the case which led to the dismissal.'" 487 U.S. 326, 340 (1988).

The trial court should also consider delays caused by the court itself. See, e.g., United States v. Ramirez, 973 F.2d 36, 39 (1st Cir. 1992) ("When a [Speedy Trial Act] violation is caused by the court or the prosecutor, it weighs in favor of granting a dismissal with prejudice."); United States v. Howard, 218 F.3d 556, 561 (6th Cir. 2000) (acknowledging possibility that a lengthy "period of inactivity on the part of the district court may warrant dismissal with prejudice in some cases"); United States v. Moss, 217 F.3d 426, 431-33, 436 (6th Cir. 2000) (Gilman, J., concurring in the judgment) (noting that the text of the federal Speedy Trial Act "clearly expresses Congress's concern that, without prodding, judges would not bring defendants to trial with sufficient speed" and concurring in the judgment remanding for an order dismissing with prejudice where district court had taken defendant's motion to suppress under advisement for ten months).

However, although neglect by the court or the State may be considered in determining whether the facts and circumstances of the case weigh in favor of dismissal with or without prejudice, a finding of neglect or intentional misconduct is not necessary to determine that this Estencion

28

factor weighs in favor of a dismissal with prejudice.  See
Ramirez, 973 F.2d at 38-39 (affirming a dismissal with
prejudice, reasoning that "[n]othing unusual occurred" in the
case and "district court merely lost track of the [Speedy Trial
Act] deadline" and noting that violations caused by the court or
prosecutor weigh in favor of granting dismissal with
prejudice).[15]

**b.    District Court's Application of the Facts and Circumstances
Factor**

The district court concluded in this case that the
facts and circumstances that led to dismissal weighed in favor
of dismissal without prejudice.  In support of its conclusion,
the court reasoned that "[n]one of the continuances were at the
request of the prosecution."  The court further determined that

---

[15]    In addition to considering the reasons for the delay, some courts
give consideration to the length of the delay in analyzing this second
factor.  See, e.g., Bert, 814 F.3d at 81 n.7 (considering the length of delay
in the context of facts and circumstances leading to dismissal but
acknowledging that it is also "intertwined with the element of prejudice").
However, the length of delay is most appropriately considered when analyzing
the third Estencion factor, impact of reprosecution on the administration of
HRPP Rule 48 and on the administration of justice.  See, e.g., State v. Kim,
109 Hawai'i 59, 64-65, 122 P.3d 1157, 1162-63 (App. 2005) (analyzing the
length of delay under the third Estencion factor); United States v. Koerber,
813 F.3d 1262, 1285 (10th Cir. 2016) (stating that the "length of delay" is
relevant when assessing the impact of reprosecution on the federal Speedy
Trial Act and on the administration of justice).  Thus, although the length
of delay in a given case may be considered by a trial court in determining
whether an HRPP Rule 48 dismissal should be with or without prejudice, it is
most appropriately considered in the context of the third Estencion factor
and will be discussed in greater detail below.

"the prosecution had no control over the process of" resolving

the subpoenas duces tecum filed by Fukuoka and the County's

resulting Motion to Quash.[16]

As discussed, when evaluating the facts and

circumstances that led to the dismissal, the court should

consider "the culpability of the conduct that led to the delay."

United States v. Cano-Silva, 402 F.3d 1031, 1036 (10th Cir.

2005).  While Fukuoka's discovery request triggered the County's

Motion to Quash, it was followed by multiple continuances over a

two-month period before the motion was resolved.  Nothing

indicates that Fukuoka requested the discovery to delay trial.

See United States v. Peppin, 365 F. Supp. 2d 261, 264 (N.D.N.Y.

2005) (noting that, under this factor, one of the main

considerations is the reasons for the delay).  Further, the

rescheduling of the trial was attributable to court congestion,

insofar as the March 25, 2015 trial date was rescheduled to

April 14, 2015, due to a previously scheduled proceeding.

The district court appears to have determined that the

second Estencion factor weighed in favor of dismissal without

_____

[16]    The district court also appears to have considered the length of
delay in this case within the second Estencion factor, as it concluded that
the 18-day delay was not "substantial."  For the reasons discussed, see
infra, III(A)(iii)(a), the district court's conclusion is analyzed within the
context of the third Estencion factor.

prejudice because the State was not to blame for the delay, the County had the right to file the Motion to Quash, and the prosecution had no control over the process.  Our caselaw, however, has emphasized that the prosecution shares with the court and the defendant the "responsibility for carrying out the speedy-trial requirements of [HRPP] Rule 48."  Coyaso, 73 Haw. at 356, 833 P.2d at 68 (quoting State v. English, 68 Haw. 46, 53, 705 P.2d 12, 17 (1985)); State v. Faalafua, 67 Haw. 335, 339, 686 P.2d 826, 829 (1984) (quoting State v. Soto, 63 Haw. 317, 321, 627 P.2d 279, 281 (1981)).

Accordingly, the court, the prosecution, and the defendant have a responsibility to facilitate timely resolution of proceedings, including discovery issues involved in a case and moving the case forward.[17]

Thus, simply because the County filed the Motion to Quash does not relieve the court and the parties from seeking to

---

[17]    The rule governing discovery, HRPP Rule 16, helps to expedite the discovery process, thereby allowing parties to get to trial more quickly. See State v. Dowsett, 10 Haw. App. 491, 497-98, 878 P.2d 739, 743 (1994) ("Faithful adherence to discovery obligations serves the public interest: Discovery provides the basic information which is necessary to expedite trials . . . ."); see also HRPP Rule 16(b)(2) (2012) ("the prosecutor shall use diligent good faith efforts" to facilitate the obtaining of discovery when material or information is sought from the possession of other government entities that would otherwise be discoverable if it had been within the control of the prosecutor, but if the prosecutor's efforts are unsuccessful, "the court shall issue suitable subpoenas or orders to cause such material or information to be made available to defense counsel").

fulfill the requirements of HRPP Rule 48.  However, the record in this case does not disclose whether the district court, the prosecution, or the defense bore any responsibility for the duration of the delay in resolving the Motion to Quash.[18] Additionally, the final continuance that resulted in the HRPP Rule 48 violation was a result of court congestion and not the actions of the parties.[19]  Here, the district court fully acknowledged that periods of delay caused by court congestion are excludable only when the congestion is attributable to exceptional circumstances.  While the court did not delineate its consideration of the court's shared responsibility for the trial delay in addressing the facts and circumstances that led to the dismissal, the Findings of Fact and Conclusions of Law indicate that the district court did not minimize its

---

[18]    The district court found that the prosecution had no control over the resolution of the discovery dispute between Fukuoka and the County.

[19]    It is noted that although Fukuoka was arraigned on October 28, 2014, an initial trial date was not set by the district court until February 20, 2015, the date that the County's Motion to Quash was ruled upon.  An earlier setting of the trial date may have helped the district court and the parties to be more cognizant of the approaching expiration of the time period to commence trial under HRPP Rule 48.  See United States v. Ramirez, 973 F.2d 36, 39 (1st Cir. 1992) ("Even though a prosecutor does not bear the burden of monitoring the court's compliance with the [Speedy Trial Act] in absence of an announced rule, district courts do look to prosecutors for assistance as officers of the court.").

responsibility for the trial continuance that resulted in the Rule 48 violation.

On certiorari, Fukuoka's challenge as to the second factor contends that the district court erroneously relieved the State from its shared responsibility under HRPP Rule 48. Fukuoka, however, references no facts or circumstances that indicate the delay in resolving the discovery dispute should be attributed to a lack of due diligence by either the County or the State. Additionally, even assuming that the State was not diligent with regard to monitoring or seeking to expedite the discovery matter, Fukuoka does not present any argument as to the effect of any such dilatory conduct on the period of trial delay or as to its impact on the district court's determination as to the second factor of the Estencion analysis. Accordingly, the record does not indicate that the district court's evaluation of the second Estencion factor was based upon its misapplication of relevant considerations, and additionally, the effect of this factor on the reasoning of the court is set forth in the court's Findings of Fact and Conclusions of Law.

### iii. Impact of Reprosecution on the Administration of HRPP Rule 48 and on the Administration of Justice

#### a. Relevant Considerations

The third Estencion factor requires the court to consider the impact of reprosecution on the administration of

HRPP Rule 48 and on the administration of justice. Estencion, 63 Haw. at 269, 625 P.2d at 1044. Thus, under the third Estencion factor, the court evaluates considerations relating to the purposes of HRPP Rule 48 and the administration of justice.

HRPP Rule 48 operates to "ensure an accused a speedy trial" and to further "policy considerations to relieve congestion in the trial court, to promptly process all cases reaching the courts, and to advance the efficiency of the criminal justice process." Id. at 268, 625 P.2d at 1043; see also State v. Jackson, 81 Hawai'i 39, 53, 912 P.2d 71, 85 (1996) (same); State v. Hoey, 77 Hawai'i 17, 29, 881 P.2d 504, 516 (1994) (same). "One way in which these goals are achieved is through the threat of sanctions for violation of HRPP Rule 48." Jackson, 81 Hawai'i at 53, 912 P.2d at 85. The rule's sanction of a dismissal with prejudice creates an incentive for courts to "design and implement efficient and fair procedures to decrease the potential for delay" and for prosecutors "to design screening procedures to ensure that as much as possible those cases that may be disposed of by means other than trial are removed from the criminal justice system as quickly as

possible." Id. (quoting State v. Kahawai, 9 Haw. App. 205, 210-11, 831 P.2d 936, 939 (1992)).[20]

In analyzing the third Estencion factor, however, the court must also consider the impact of reprosecution on the administration of justice generally. Courts have noted that the "government can always argue that reprosecution furthers the public's interest in bringing [defendants] to trial." State v. Kim, 109 Hawai'i 59, 64, 122 P.3d 1157, 1162 (App. 2005) (quoting United States v. Williams, 314 F.3d 552, 559-60 (11th Cir. 2002)). On the other hand, the administration of justice is also furthered by the timely and efficient adjudication of criminal cases. See Jackson, 81 Hawai'i at 54, 912 P.2d at 86 (observing that a remedy that increases congestion in the courts "disgraces the administration of justice"); United States v. Koory, 20 F.3d 844, 849 (8th Cir. 1994) (observing that

---

[20] Thus, it may be argued that only dismissal with prejudice effectuates the purposes of the rule and so, the impact of reprosecution on the administration of HRPP Rule 48 weighs in favor of dismissal with prejudice. See Jackson, 81 Hawai'i at 53 n.13, 912 P.2d at 85 n.13 (dismissal without prejudice "[i]n effect . . . rewards unacceptable delay with further delay" (quoting Robert L. Misner, Speedy Trial: Federal and State Practice 300 (1983))). Although the argument may have validity, this consideration alone is an insufficient basis for dismissal with prejudice. See United States v. Koory, 20 F.3d 844, 849 (8th Cir. 1994) ("Reprosecution always involves some element of increased burden on the administration of justice and hinders the [Speedy Trial] Act's goal of swift prosecution, yet the Act does not mandate that every dismissal be with prejudice.").

permitting reprosecution may result in an "increased burden on the administration of justice").

These diverse and often competing interests in furthering the administration of HRPP Rule 48 and in serving the administration of justice are inherent in every case. There are, however, circumstances that are unique to each case that are relevant to these interests and that a court may consider in analyzing the third Estencion factor. See United States v. Godoy, 821 F.2d 1498, 1506 (11th Cir. 1987) (stating that the defendants failed to show "any unique circumstances" that weigh on the impact of reprosecution on the administration of the speedy trial rule and on the administration of justice). For example, the court may consider whether the State or the court's conduct in the case reflect a pattern of lack of diligence, thereby suggesting that dismissal with prejudice is necessary to vindicate the purposes of HRPP Rule 48 and justice generally. See United States v. Giambrone, 920 F.2d 176, 180-81 (2d Cir. 1990) ("A pattern of disregard for speedy trial rights is also detrimental to the administration of the criminal justice system since delays risk the loss of important evidence, and repetitive prosecutions on the same charges cause wasteful replication of effort.").

Prejudice to the defendant may also be considered when analyzing the impact of reprosecution on the administration of HRPP Rule 48 and on the administration of justice. Coyaso, 73 Haw. at 357, 833 P.2d at 69. Prejudice to the defendant in the context of a statutory speedy trial violation "may take many forms" and is often closely related to the length of delay, insofar as the length of the delay in a given case may be relevant to the extent that it causes prejudice to the defendant. United States v. Taylor, 487 U.S. 326, 340, 341 n.13 (1988) ("The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty . . . ."); United States v. Hastings, 847 F.2d 920, 929 (1st Cir. 1988) (identifying "length of delay" as a "proxy for direct proof of actual prejudice" because "stretching delay to greater and greater extents tends ineluctably to provoke prejudice"). Longer delays, for example, may more significantly impair a defendant's ability to mount an effective defense. See, e.g., United States v. Jones, 601 F.3d 1247, 1257-58 (11th Cir. 2010) (observing in context of the third factor that the brief length of delay did not impair the defendant's ability to present his defense).

Although the prejudice caused to a defendant by the trial delay may be considered in determining the impact of reprosecution on the administration of HRPP Rule 48 and on the administration of justice, this court has cautioned that prejudice to the defendant is not a "mandatory factor to be considered by the trial court prior to ordering dismissal with prejudice" for an HRPP Rule 48 violation.[21]  Coyaso, 73 Haw. at 355, 833 P.2d at 68.  Rather, the Coyaso court held that "dismissal with prejudice may be warranted without a specific finding that the defendant has been prejudiced by the delay." Id. at 356, 833 P.2d at 68.  Indeed, to consider the absence of prejudice to be a consequential consideration in analyzing the third Estencion factor would essentially adopt the considerably higher standard used in constitutional speedy trial jurisprudence despite the fact that HRPP Rule 48 is intended to provide broader protections than the analogous constitutional guarantee.  See id. at 355-56, 833 P.2d at 68 (observing that HRPP Rule 48's purpose is "broader than the constitutional right to a speedy trial" and rejecting the ICA's conclusion that a showing of prejudice was required to prohibit reprosecution

---

[21]    Fukuoka makes no substantive argument with respect to prejudice in his application for a writ of certiorari to this court, and therefore, we do not address this consideration.

38

following an HRPP Rule 48 violation because prejudice is a mandatory factor to consider in constitutional speedy trial analysis); see also Wayne R. LaFave et al., Criminal Procedure 1069 (6th ed. 2017) (describing that federal and state statutes guaranteeing the right to a speedy trial are necessary in part because the constitutional right is inadequate to ensure timely proceedings and because defendants "as a class need some additional basis upon which to compel the government to try them promptly"). Therefore, although the presence of prejudice to the defendant may be of substantial importance in analyzing the third Estencion factor, there is no requirement that the absence of prejudice "be separately considered prior to dismissal with prejudice under Rule 48(b)." Coyaso, 73 Haw. at 357, 833 P.2d at 69.

## b. District Court's Application of the Impact of Reprosecution Factor

The district court determined that "the seriousness of the offenses and the facts and circumstances that led to the dismissal outweigh any impact of a reprosecution on the administration of [HRPP Rule 48], and on the administration of justice." The court reasoned that, with respect to the impact of reprosecution, there had been "no showing of any prejudice to the defendant" and that "a reprosecution furthers the public's interest in bringing criminal defendants to trial." The

district court also determined that the delay of 18 days in violation of HRPP Rule 48 in this case was not "substantial."

As discussed, the trial court is required to explain the effect of the Estencion factors on its reasoning to dismiss a charge with or without prejudice. Hern, 133 Hawai'i at 64, 323 P.3d at 1246. With respect to the third factor, the district court's explanation is not clear. On the one hand, the court determined that the first and second factors outweighed "any impact of reprosecution," which suggests that the district court concluded that permitting reprosecution in this case would have an adverse impact on the administration of HRPP Rule 48 and the administration of justice.[22] On the other hand, the court concluded that reprosecution would serve the public's interest.

The district court's conclusion that "a reprosecution furthers the public's interest in bringing criminal defendants to trial" would inherently be applicable in every case in which an HRPP Rule 48 violation occurred. Relying on such a consideration in analyzing the third Estencion factor would essentially put a thumb on the scale in favor of dismissal without prejudice for every HRPP Rule 48 violation, which is

---

[22] The district court in its oral order denying the Motion to Reconsider stated that "given the short delay[, it did] not find that there would be a significant impact of reprosecution under [HRPP] Rule 48."

contrary to the requirement that the trial court consider the three Estencion factors as they apply to the circumstances of each individual case.  See Hern, 133 Hawai'i at 64-65, 323 P.3d at 1246-47 (requiring the trial court to analyze and articulate the effect of the Estencion factors as they apply to each HRPP Rule 48 violation).

The district court also concluded in its Findings of Fact and Conclusions of Law that the 18-day delay was not "substantial."  However, identifying a delay as "substantial" or "not substantial," based merely on the number of days of delay, could create a situation in which a motion to dismiss for an HRPP Rule 48 violation would be brought just before commencement of the trial in order to make the delay more "substantial."  Creating an incentive for strategic timing of a motion to dismiss would not appear to benefit the administration of justice or HRPP Rule 48 itself.  Rather, the brevity of a delay, if considered, should be viewed in the context of any potential impact on the administration of justice or of any prejudice resulting to the defendant.[23]  Correspondingly, a long delay may

---

[23]      While the district court separately "note[d]" in analyzing the third Estencion factor that Fukuoka had made no showing of prejudice, the absence of prejudice is not a consequential consideration under the third factor, see Coyaso, 73 Haw. at 355-57, 833 P.2d at 68-69, as such a requirement would run counter to HRPP Rule 48's purpose of providing broader

(continued . . .)

41

be significant in evaluating whether to permit reprosecution,
insofar as a lengthy delay may reflect a lack of due diligence
on the part of the State or the court and adversely impact the
administration of HRPP Rule 48 and the administration of
justice.  See United States v. Giambrone, 920 F.2d 176, 180-81
(2d Cir. 1990).

Accordingly, although the district court could have
more clearly explained its reasoning regarding the third
Estencion factor, the court's ultimate assessment that the first
and second factors outweighed any impact of the third factor
indicates that the court recognized the adverse impact of
reprosecution on the administration of HRPP Rule 48 and on the
administration of justice.  Fukuoka made no specific challenge
on certiorari regarding the district court's analysis of the
third Estencion factor, which implicitly favored Fukuoka's
position, and the record does not indicate that relevant
considerations were misapplied by the district court to the
extent the court's evaluation of this factor was affected.

(. . . continued)

protection than the constitutional speedy trial guarantee.  See supra
III(A)(iii)(a).  It appears that the district court correctly did not weigh
the absence of prejudice against Fukuoka (or at least not to any significant
degree), as the court found that the first two Estencion factors outweighed
the third factor, thus indicating that the court did not consider the absence
of prejudice as a consequential consideration.

## B.    Dismissal With or Without Prejudice

In analyzing whether to dismiss a case with or without prejudice for a violation of HRPP Rule 48, the court must evaluate each Estencion factor and determine whether the balance of the factors weighs in favor of permitting or prohibiting reprosecution.  See State v. Hern, 133 Hawai'i 59, 65, 323 P.3d 1241, 1247 (App. 2013) ("The trial court's explanation of its consideration of the Estencion factors and the basis for its decision will permit meaningful appellate review."); United States v. Clymer, 25 F.3d 824, 831 (9th Cir. 1994) (observing that the three factors must be balanced and that no one factor is dispositive); United States v. Montecalvo, 861 F. Supp. 2d 110, 116 (E.D.N.Y. 2012) (noting that even when seriousness of the offense factor weighs in favor of dismissal without prejudice, "seriousness alone is not determinative" and must be weighed against the other two factors).  When conducting that analysis, trial courts must consider the factors as they apply to each individual case.  See Hern, 133 Hawai'i at 65, 323 P.3d at 1247 (remanding to the trial court because the court relied on a blanket policy to dismiss without prejudice rather than "considering the Estencion factors and exercising its discretion based on the particular circumstances" of the case).

The district court concluded with regard to the first Estencion factor that although the charges in this case involve petty misdemeanor offenses, the charges were serious in nature as the crime of OVUII can result in significant harms. The court also found that the other charges in this case were inextricably tied to the charge of OVUII. As to the second Estencion factor, the court found that the facts and circumstances in this case did not weigh in favor of dismissal with prejudice because none of the continuances were at the request of the prosecution and the prosecution had no control over the County's Motion to Quash. Fukuoka's contention that the State was responsible for the delay of trial is not supported by the record. As to the third Estencion factor, relating to the impact of reprosecution on HRPP Rule 48 and the administration of justice, the district court concluded that any impact was "outweighed" by the first and second factors. This conclusion acknowledged the adverse impact of reprosecution on the administration of HRPP Rule 48 and on the administration of justice in this case. As to each Estencion factor, the district court, under the circumstances of this case, sufficiently applied relevant considerations within its analysis.

The district court also appropriately considered whether the balance of the factors weighed in favor of

permitting or prohibiting reprosecution.  In reaching its decision, the district court evaluated each <u>Estencion</u> factor, sufficiently explained under the circumstances of this case the effects of the <u>Estencion</u> factors on its reasoning, and weighed the <u>Estencion</u> factors against one another.  We therefore conclude based on the record in this case--and in light of the applicable principles that guide a court in the exercise of its discretion--that the district court did not abuse its discretion in dismissing the charges without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the district court's entry of the Order Dismissing Without Prejudice was not an abuse of discretion.  Accordingly, we affirm the ICA's Judgment on Appeal.

Hayden Aluli
for petitioner

John D. Kim and
Richard K. Minatoya
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

